The German Insurance Company v. Anderson Gray.

1. Insurance — *Error in Application* — *Company, Bound.* In an application for insurance, where correct answers are given to a general agent of the company respecting incumbrances on the property of the applicant, and such agent fails to mention the incumbrances in the written application, but procures the signature of the applicant, accepts the premium, and closes the contract, the company will not be relieved from liability on account of misrepresentations in the application, although it was stipulated therein that it should be considered a part of the policy, and a warranty by the insured of the truth of the statements which it contained.

32 — 43 kas.

2. GENERAL *Agent — Modifying Contract.* A general agent of an insurance company can modify the insurance contract or waive a condition of a written policy by parol.

3. POLICY — *Waiver of Conditions.* A provision in an insurance policy respecting incumbrances on the property insured may be waived by the insurance company or its general agent; and this although the policy contains a printed stipulation that no agent of the company or any person other than the president or secretary shall have authority to waive any of the terms or conditions of the policy, and all agreements by the president or secretary must be signed by either of them.

4. Loss *Adjusted — Objection to Proofs, When Precluded.* Where proofs of loss are taken by a duly-authorized adjuster of the company, who expresses satisfaction with the same, and states that he will forward them to the office of the company, and that the loss will soon be paid, the insured has a right to assume, until notified to the contrary, that no other or different proofs will be required; and the failure of the company to object to them within a reasonable time precludes it from thereafter objecting that they are insufficient.

*Error from Sumner District Court.*

THIS was an action for loss by fire upon a policy of insurance executed December 4, 1885, insuring, among other property, the following, for the amounts named: Barn and shed, $200; hay, in barn, $200; grain, in barn and in stack on cultivated premises, $1,500,; farming implements, $300. The fire occurred on May 28, 1886, and the property mentioned, which is alleged to be of the total value of $2,200, was wholly destroyed by the fire. The plaintiff alleged that the contract of insurance was in full force at the time of the fire, that the property was destroyed without any fault of his, and that he had fully complied with all the requirements and agreements of the contract, but the insurance company refused and still refuses to pay the amount of the loss. He demanded judgment in the sum of $2,200, with interest from the time of the fire. The answer alleged, that in the application for insurance by Gray he warranted that all the answers made by him to questions therein propounded were true; that in response to a question in regard to what mortgages and incumbrances were upon the property, he failed to disclose a mortgage for

$5,749.35, dated March 23, 1885, in favor of John S. Woods; and further, that Gray, after the issuance of the policy, and without the consent of the insurance company, indorsed on the policy, and, in violation of the terms of the policy, incumbered and mortgaged the property insured under the policy as follows: On May 15, 1886, he made and delivered a mortgage to A. Brennaman for $3,110, upon the real estate on which the insured buildings stood, and upon 2,000 bushels of wheat in the granary, and about 300 acres of growing wheat; and further, on December 22, 1885, that he made and delivered to the Sumner County Bank a mortgage of $700 on some farming implements and other articles covered by the policy. In his reply Gray admitted the existence and the making of the mortgages mentioned in the answer, but alleged that he gave a full statement of all the incumbrances on the property when the application for insurance was made, and also made known to the defendant that the mortgages would mature during the existence of the policy, and that he would be wholly unable to meet the indebtedness or remove the incumbrances, except by making and giving new mortgages, and renewing the incumbrances on the property; and he alleged that it was expressly stipulated and agreed between himself and the insurance company that he should be permitted to incumber his property; and that H. Steinbuschel & Brother, the duly-authorized agents of the company, expressly waived the condition written in the policy against incumbrances, and expressly agreed in behalf of the company that he should have the right, notwithstanding the printed stipulations, to renew and extend the mortgages and incumbrances upon the property or any part thereof. Upon the trial, the jury returned special findings of fact with their general verdict as follows:

"Q. 1. Was there any chattel mortgage on the wheat covered by the insurance policy sued on in this action at the time said insurance policy was issued and delivered to Anderson Gray? A. Yes."

"Q. 5. Did the said plaintiff, at any time after the insurance and delivery to the said Anderson Gray of the insurance

policy sued on in this action and before the time plaintiff claims that the property covered by said policy was destroyed by fire, give to any person any chattel mortgage upon any of the property covered by said policy? A. Yes." ·

"Q. 7. Were there any chattel mortgages upon any of the property covered by the insurance policy sued on in this action at the time said plaintiff claims the said property was destroyed by fire? A. Yes."

"Q. 10. What was the value of each item of property insured at the time plaintiff claims the same was destroyed by fire? A. 2,000 bushels wheat, $1,500; six tons hay, $18; 2 two-horse Bain wagons, $80; 1 piano-box single buggy, $100; 1 ten-foot Hodges header, $100; 1 Buckeye mower, $40; 1 Bradley hay rake, $15; 1 corn planter, $45; 1 Wier double cultivator, $15; 1 press wheat drill, $40; 2 one-horse wheat drills, $30; 1 wheat fanning mill, $30; barn, $800; harness, $55.

"Q. 11. What interest did the plaintiff have in and to each separate item of said property at the time he claims said property was destroyed? A. Wheat, owner; hay, owner; Bain two-horse wagons, owner; 1 piano-box single buggy, owner; header, owner; 1 mower, owner; 1 hay rake, owner; corn planter, owner; double cultivator, owner; press wheat drill, owner; 2 one-horse wheat drills, owner; fanning mill, owner; barn, owner; harness, owner.

"Q. 12. What was the value of the plaintiff's interest in each item of said property at the time said plaintiff claims the same was destroyed by fire? A. Same as No. 10.

"Q. 13. Did the plaintiff read the written application for insurance which has been offered in evidence in the case before or at the time he signed the same? A. No.

"Q. 14. Could plaintiff at that time read writing and printing well enough to read such written application? A. Yes.

"Q. 15. Did plaintiff have an opportunity to read said written application before or at the time he signed the same? A. Yes.

"Q. 16. Did Anderson Gray, the plaintiff in this action, tell Mr. Steinbuschel, the agent of said defendant, at the time said written application for insurance was being written up, or before that time, of the existence of any mortgages upon any of the property covered by said insurance policy other than the one mentioned in said written application? A. Yes."

"Q. 18. If you answer question 16 in the affirmative, then

you may state if said agent of the defendant stated to plaintiff at that time that he would not mention such mortgages in said written application? A. Yes."

"Q. 20. If all the mortgages that were upon the said property or any part thereof so covered by said insurance policy were not mentioned in said written application, state fully why they were not so mentioned, and all the reasons therefor so far as you find that they were known to plaintiff at that time. A. Agent refused to put it in application, saying it was not necessary, because 'I issue my own policies and adjust the losses.'

"Q. 21. Was the plaintiff at any time authorized by said defendant to mortgage or remortgage the said property covered by said insurance policy after the said insurance was issued and delivered to said plaintiff? A. Yes.

"Q. 22. If you answer question No. 21 in the affirmative, you will then please state at what time said authority was given, and by what officer or agent such authority was given, and whether such authority was given orally or in writing. A. First when application was made out; second, when policy was returned by Steinbuschel and brother, district agent. Orally."

"We, the jury impaneled and sworn in the above-entitled case, do upon our oaths find for the plaintiff, and assess the amount of his recovery at $2,018, with interest at 7 per cent. from July 28th, 1886."

A motion for a new trial was made and overruled, and the court thereupon entered judgment in accordance with the verdict for $2,125.95, with interest thereon from June 4, 1887, at the rate of 7 per cent. per annum. The insurance company brings the case here, alleging error, and asking a reversal of the judgment.

*Geo. W. Barnett,* and *George & King,* for plaintiff in error.

*McDonald & Parker,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The greater part of the testimony taken in the case was with reference to the extent and value of the property destroyed, and as to whether or not the fire was the

result of the action of the insured. But these questions, as
well as all others upon which there was a conflict of evidence,
have been determined by the jury in favor of the insured.
The insurance company now seeks to escape liability upon the
ground that Gray failed to disclose the existence of incum-
brances upon the property when he made the application for
insurance, and also because he had incumbered the property
after the policy was issued without the consent of the com-
pany indorsed thereon, and in violation of its provisions.
The application for insurance was made on December 2, 1885,
to Steinbuschel & Brother, of Wichita, who were agents of the
company for that portion of the state in which the property
was situated. They wrote the answers to the questions pro-
pounded to Gray, and the application contained the statement
that the answers made were true. The application mentions
only one mortgage, but Gray testifies that he stated his in-
debtedness and the incumbrances on his property to the agents
fully and in detail, telling them that it would be necessary for
him to mortgage and remortgage his property in the conduct
of his business during the time for which the insurance was
contracted. This is disputed, but the jury sustain Gray, and
find that the company was fully informed in respect to the
existing incumbrances. The policy was not delivered by the
agents at the time the application was made, but was sent by
them to Gray at Conway Springs, Sumner county, near which
place he resided. Soon after it had been so delivered, he dis-
covered that it contained a provision that if the property
should thereafter become mortgaged or incumbered, or in case
a change should take place in the title, the policy should be
null and void. He immediately went to the agent, called his
attention to the provision prohibiting the incumbering of his
property, and insisted that it must be changed. After look-
ing at the policy, Steinbuschel said that he would waive the
condition relative to incumbrances, stating that he had author-
ity for that purpose, and Gray, acting upon this waiver and
agreement, mortgaged the property as has already been stated.
The incumbrances placed on the property, however, were

mostly if not entirely the renewal and extension of debts and mortgages existing when the contract of insurance was made. In regard to the misrepresentations in the application, we must assume that Gray gave correct answers to all questions asked. There was no concealment nor deception on his part. Steinbuschel, authorized by and acting for the company, prepared the application, and purposely omitted a fuller statement concerning incumbrances. It was the fault of Steinbuschel, or the company which he represented, and not of the insured, that the application did not contain a complete statement. Steinbuschel having authority, his act must be treated as the act of the company, and through him the company had knowledge of all the incumbrances. With this knowledge the company accepted the risk and the premium therefor, induced Gray to sign the application, which did not state the whole truth, and now, when the loss occurs, it cannot, under our decisions, insist on the breach of warranty or the untruth of the representations. (*Sullivan v. Phœnix Ins. Co.*, 34 Kas. 170; *Continental Ins. Co. v. Pearce*, 39 id. 396; *Ins. Co. v. Barnes*, 41 id. 161; *Protective Union v. Gardner*, 41 id. 401.)

1. Insurance—error in application—company bound.

It is next contended that the giving of the subsequent mortgages by the insured avoided the policy; and in that connection it is urged that error was committed in admitting testimony of the verbal agreement modifying the terms of the policy and waiving its conditions. We think the waiver must be upheld and the point made by the company overruled. The agents who made the agreement were more than mere local or soliciting agents. They fully represented the company within a certain district; were authorized to solicit insurance, receive moneys and premiums, issue and renew policies; and the testimony is that they appointed sub-agents and adjusted losses. Only a short time previous to the making of the contract in question, they adjusted a loss under another insurance policy issued by the same company to Gray, and paid him the amount of the loss. Gray had a right to assume, and we may fairly assume, that they were general agents of the company. In

this state the courts have taken a liberal view with reference to the power of agents, and especially where they were representing foreign companies, which can only act through their agents, and where the agent is practically the principal in the making of contracts. (*Ins. Co. v. McLanathan*, 11 Kas. 549, and cases above cited.) Being general agents, empowered to to make and renew contracts, they stood in this respect in the place of the company, and certainly must be held to have the power to modify the same or to waive any of the conditions in the contract which they had made. We are referred to *Insurance Co. v. Gibbons*, ante, p. 15, 22 Pac. Rep. 1010, where the power of the agent to waive a condition was denied. In that case the agent had no authority from his company except as a soliciting agent, and it did not appear that he had any authority to issue policies, and he did not even countersign them when issued. In that case, however, it was said that —

2. General agent —modifying contract.

"It has generally been held that where a person in procuring an insurance upon his property acts in good faith and without any knowledge of any limitations upon the authority of the agent of the insurance company effecting the insurance, such person may assume that the agent is a general agent of the insurance company for that purpose; that he stands in the place of the company, and that the company will be bound by any terms or conditions or any waiver of terms or conditions that the agent may agree to while acting for the company in consummating the insurance."

If it was within the power of the company, acting through its agents, to waive a condition or change the contract, it surely might do so by a parol contract, and might even waive the provisions stated in the policy with reference to the manner of altering or waiving its terms and conditions. In *Insurance Co. v. Earle*, 33 Mich. 143, the court, in considering the question whether an agent of a company might change by parol the conditions of a policy wherein it was provided that it could only be done upon the consent of the company written thereon, held that the written policy might be changed by parol, and stated that "a written bargain is of no higher legal

degree than a parol one.  Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol than in a parol agreement not to agree in writing.  Every such agreement is ended by the new one which contradicts it."  See also *Ins. Co. v. Fahrenkruk,* 86 Ill. 463.  In the present case, as in some of the cases cited, it was stipulated in the policy that no agent of the company, or any other person than the president or secretary, should have authority to alter or waive any of the terms or conditions of the policy, or make any indorsement thereon; and all agreements of the president or secretary must be signed by either of them.  This provision, however, may be modified by the company to the same extent as any other; and whatever the company can do may be done by its general agents.  *Reiner v. Insurance Co.,* 42 N. W. Rep. 208, was a case somewhat similar to the one we are considering.  In that case the policy provided that the application should form a part of the policy and a warranty by the assured.  In the application for insurance it was stated that the property insured was not incumbered; but it appeared that the property was mortgaged, and that the insured informed the agent of the company of the existence of the mortgages, and he falsely wrote the answers therein, and the application was signed at the request of the agent.  In the policy issued was a provision that "no act or omission of the company, or any act of its officers or agents, shall be deemed, construed or held to be a waiver of a full and strict compliance with the foregoing provisions of the terms and conditions of this policy, except it be a waiver or extension in express terms in writing, signed by the president or secretary of the company."  It was held that the action of the agent, with knowledge of the existence of the mortgage, was binding upon the company, and a waiver of the condition of the policy against incumbrances; and this notwithstanding the limitation of authority of such agent expressed in the pro-

3. Policy—
   waiver of
   conditions.

vision quoted on the face of the policy.    Speaking of the re-
striction, the court said :

"We must hold, however, that such attempted restriction
upon the power of the company or its general officers or
agents acting within the scope of their general authority to
subsequently modify the contract and bind the company in a
manner contrary to such previous conditions in the policy, are
ineffectual.    Especially is this true in respect to a foreign
insurance company whose officers are practically inaccessible
to the assured."

Citing *Gans v. Ins. Co.*, 43 Wis. 108; *Ins. Co. v. Gallatin*,
48 id. 36; *Shafer v. Ins. Co.* 53 id. 361; *Lamberton v. Ins.
Co.*, 39 N. W. Rep. 76; *Willcuts v. Ins. Co.*, 81 Ind. 308;
*Steen v. Ins. Co.*, 89 N. Y. 326; *Richmond v. Ins. Co.*, 79 id.
230; *Rld. Co. v. Ins. Co.*, 105 Mass. 570; *Ins. Co. v. Green*,
57 Ga. 469; *Ins. Co. v. Earle*, 33 Mich. 143.

The court, proceeding further, says:

"Of course an insurance company— and especially a foreign
insurance company — in making contracts of insurance and
adjusting, settling and paying losses, must act through its
agents, if at all.    To hold that in such negotiations between such
general agent and the assured the latter is bound, but that in
the same transaction the company, the agent's principal, can-
not be bound, by reason of having incapacitated itself and
them by previous stipulations from agreeing to anything con-
trary to the conditions contained in the original contract, is,
under most policies, in effect to hold that there is no mutuality
in such contracts, and that the powers of such general agents
are limited to the obtaining of premiums, and then defeating
the enforcement of the policies upon which they were paid."

It is clear that the company was not so bound but that it
might modify any contract which it had made or waive any
of the conditions contained therein, and this may be done
through its general agents.    The knowledge of Steinbuschel
& Brother in this case was the knowledge of the company,
and their act was its act.    When Gray applied for the insur-
ance he informed the company with reference to the incum-

brances, as well as his necessity and purpose to continue them. Knowing these facts, the premium was accepted and the policy issued. Subsequent to the issuance of the policy there was an express agreement that he might renew his mortgages, as he had informed the company it would be necessary to do, and the renewal of the incumbrances did not in any material degree affect the risk which the company took. Accepting his statement, as the jury have done, we must assume that he acted in good faith with the company and its agents, and that he was induced by the agreements and action of the company to believe that he was warranted in renewing the mortgages. After receiving and retaining the premium, knowing the purpose and necessity of Gray to renew the incumbrances, and after a specific agreement waiving that condition of the policy and authorizing him to renew the incumbrances, and after remaining silent, and allowing him to proceed as though he was insured, until a loss occurs, the company will not be heard to repudiate its contract or to deny its liability. We are aware that the authorities are not uniform upon the subject of waivers in policies like this one; but forfeitures are not favored in the law, and the view we have taken of the power of a general agent to waive the condition of a policy is more satisfactory to us, and is sufficiently supported. In addition to the authorities already cited, see the following: *Young v. Ins. Co.*, 45 Iowa, 377; *King v. Ins. Co.*, 72 id. 310; *Morrison v. Ins. Co.*, 6 S. W. Rep. 605; *McGurk v. Ins. Co.*, 16 Atl. Rep. 236; *Ins. Co. v. Gallatin*, 48 Wis. 36; *Bartlett v. Ins. Co.*, 41 N. W. Rep. 601; *Key v. Ins. Co.*, 41 id. 614; *Aid Ass'n v. Sweetser*, 19 id. 722; 2 Wood on Fire Ins., §§ 422, 525.

It is further contended that a forfeiture occurred by reason of the failure of Gray to send proofs of loss to the company. It is shown that immediately after the fire he notified Steinbuschel & Brother of the loss, and they stated that they would at once inform the company. Within a few days an adjuster of the company, whose authority is not denied, came to Gray's place and requested him to go before an officer and make

proof of loss. The proofs were reduced to writing, signed and sworn to, and delivered to the adjuster; and there is testimony to the effect that he expressed satisfaction with them, and stated that he would forward them to the company's office, and would return in a few days and settle the loss. This testimony was submitted to the jury under the following directions:

"There is evidence tending to show that these statements were taken by said Winne as the agent of said company, and sent to said company; and it will be a question for the jury to determine, whether such statements and proofs are such as are required by the policy, and if not, whether the plaintiff was justified under the circumstances in believing, and did believe, that the proofs were satisfactory to the agent of the company and to the company, and that no further proofs would be required; and if the jury find from the evidence that the plaintiff was justified in believing and did believe that the proofs furnished to said Winne were satisfactory to him and to the company, and further find that such proofs and statements were sent to the company by said Winne, and that the company made no objection thereto and requested no further proofs to be made by the plaintiff within a reasonable time, and within the sixty days after the fire, the jury would be justified in finding that defendant had waived the making of further proofs of loss.

"If at the time such affidavits and statements were made at the request of said Winne it was understood between said agent and said plaintiff that such statements and affidavits should not constitute the proofs required by the policy, and should not be considered as a waiver of such proofs, and that by taking such statements and affidavits said Winne should not and did not waive the making of the proofs in accordance with the provisions of the policy, then the jury would not be justified in finding that the taking of such statements and affidavits by said Winne, or that the acts and conduct of said Winne at the time of taking such statements and affidavits, constituted a waiver of the proofs required by the policy."

The testimony was sufficient to sustain the finding of the jury. Neither the adjuster nor anyone representing the company returned the proofs or claimed that they were insufficient. The company recognized the loss, took all the proofs it deemed

essential to an adjustment, and instead of claiming that they were insufficient, expressed satisfaction with them, and stated that the loss would soon be paid. Assuming the existence of the facts stated, we think the assured had a right to assume, until notified to the contrary, that no other or different proofs would be required.

*4. Loss adjusted —objection to proofs, when precluded.*

There are some criticisms in regard to the refusal of the court to give instructions, but what has already been said in the opinion disposes of the material objections that are made. The charge of the court fairly submitted the questions involved to the jury. Finding no error, the judgment of the district court will be affirmed.

All the Justices concurring.