## THE PHENIX INSURANCE COMPANY v. FRANK N. MUNGER.

1. FIRE INSURANCE—*Proof of Loss—Waiver—Custom and Usage.* In an action upon a fire insurance policy, where the policy itself expressed what was to be done by the parties in case of loss, it is error for the court to admit evidence as to the practice of other insurance agents in the same town, to establish the custom that proofs of loss were not required. Such evidence should be limited to the custom and usage of the company charged with liability, and is only competent then to show the power and authority given to the agent.

2. GENERAL AGENT—*Powers.* An agent of an insurance company who is given full power to receive proposals of insurance against loss and damage by fire within a given territory in this state, and is authorized to fix rates of premium, to receive moneys, and to countersign, issue and renew policies of insurance, is a general agent of such company, and may, after loss, bind the company, by a parol waiver of

the conditions as to furnishing complete proofs of loss within 30 days after such loss shall have occurred, with builder's estimate of the value of the building, notwithstanding the policy provides that a waiver shall be void unless it is in writing, signed by the agent, and indorsed thereon.

### Error from Republic District Court.

THE facts are fully stated in the opinion. Judgment for plaintiff, *Munger*, at the May term, 1889. The defendant *Company* comes to this court.

*T. M. Noble*, and *W. C. Webb*, for plaintiff in error:

Munger testified as to Bell's statements, as follows:

"Mr. Bell told me it was not necessary; that he never had made proofs of any losses that he had had in town, and that none of the companies doing business here ever made proofs that he knew of. He told me that he had notified the company of the loss, and that there would undoubtedly be an agent here in a very few days to attend to it. He also cited me to a building on the corner that he had a risk on; that they made no proof, and that the adjuster had been here and adjusted the loss. Told me it would be better to let it stand until the adjuster came, and then if he required proof I could make it, or he could ask me any questions he saw fit about the fire."

Every word of that "testimony" (so-called) was incompetent, and it was error to admit it. Munger had on that very day, only "two days after the fire," read over his policy, and his attention was "attracted particularly" to that clause in the policy which "demanded proof of loss within 30 days after the fire." He had no right to "suppose" Bell could waive or dispense with the written requirement which he had seen and read in the policy. A motion was promptly made to strike out this incompetent testimony, but the motion was promptly overruled by the court. And then Munger was permitted, over objection and exception, to tell five different times what he "supposed" respecting Bell's being an agent of the company, and as such what he was capable of doing, and what "connection" there was between his "supposition" respecting Bell's capacity and the "supposed fact that Bell

was agent of the Phenix Insurance Company." And motions to strike out this incompetent stuff (it does not rise to the dignity of testimony) were as promptly overruled as the objections first made to it. Munger said that about a week later he asked Bell if he had heard from the company, and Bell said he had, and "their man would be here to attend to the loss in a few days." This proves nothing; but it is explicitly shown elsewhere that Bell was not authorized nor even requested to communicate any information to Munger, nor to show him any letters, nor to adjust any losses whatever for defendant, nor to adjust the loss of Munger, nor to waive any condition of the policy.

Geo. S. Simonds was next called by Munger. He had been "agent for different insurance companies for about 10 years, as local or recording agent." This witness was asked if he "had become familiar with the practice and rules of insurance business, in reference to losses, and the conduct of the business after the loss has occurred, in this vicinity." This question was objected to by defendant as being incompetent, irrelevant, and immaterial, which objection was by the court overruled, to which ruling the defendant duly excepted.

Now we submit that the ruling of the court in all these instances was gross error. Not one of the questions was competent at all. "Custom," and especially local custom, never overrides or destroys plain written contracts. The court below refused to permit the witness Bell to testify to the "custom" of insurers. How it could change its rulings, and allow the questions and the incompetent testimony last above quoted, is amazing. No authority can be found in the books which will sustain the court below in overruling defendant's objections. In the case of *Graham v. Trimmer*, 6 Kas. 230, there was no express contract between the parties, and it was held competent to prove the "customary method" of measuring certain work; but in the opinion this court (6 Kas. 237) says:

"It is, however, to be remarked that evidence of the nature referred to will not have the effect of changing or affecting an

express contract of parties in regard to the subject-matter to which it is directed."

In the case at bar, the contract was alike express and written, and was between the Phenix Insurance Company and Munger; yet the court below allowed proof of a "local custom" said to exist between strangers to the contract in question to be given in evidence to destroy or vary that contract!

In *Stout v. McLachlin*, 38 Kas. 120, there was a written contract, which is copied in the opinion, at page 122. An attempt was made to prove a custom on the part of Wilson, one of the parties to the contract, which was at variance with the written contract. This court held that such proof was incompetent. It states the well-understood rule respecting "usage and custom," and how far they are admissible when the party to be affected has knowledge of them, and says:

"The proof of usage can only be received to show the intention or understanding of the parties in the absence of specific agreement, or to explain the terms of a written contract."

And in that case this court quotes with approbation from the opinion of Mr. Justice Miller, in *Partridge v. Insurance Company*, 15 Wall. 375, where it is explicitly asserted that proof of custom cannot be made "to add to, vary or contradict the well-expressed intention of the parties made in writing." See, also, other cases cited by this court in 38 Kas. 125, 126.

Had the local agent of defendant at Belleville any power or authority, after the policy contract had been delivered and accepted by the parties thereto, and after a loss had occurred, to waive its written conditions or provisions? The provisions of the policy issued to Munger are plain and explicit. That they are valid and mean something, is shown by innumerable authorities. Wood, Ins., 2d ed., §§ 144, 436, 437.

That a policy of insurance is a contract, binding upon both the insured and insurer; that the provisions requiring proofs of loss within a certain time are valid; and that such provisions are conditions precedent to the right to recover upon the policy, are questions that have been answered in the affirma-

tive so many times that they are not, in the absence of special circumstances, open to dispute or argument; and it is hardly necessary to more than refer to some of the many cases declaring this to be well-settled law. See *Worsley v. Wood*, 6 Term R. 710; *Columbian Fire Insurance Co. v. Lawrence*, 10 Pet. 107; *Noonan v. Hartford Insurance Co.*, 21 Mo. 81; *N. W. Insurance Co. v. Atkins*, 3 Bush, 328; *Central City Insurance Co. v. Oates*, 18 Ins. L. J. 761; *West v. Lockyer*, 2 H. Bl. R. 574; *Blakely v. Insurance Company*, 20 Wis. 205, 209; *Blossom v. Insurance Company*, 64 N. Y. 162; Angell, Ins., §§ 223–227.

This court, in the case of *Dwelling-House Insurance Co. v. Hardie*, 37 Kas. 674, 676, plainly recognizes the right of the parties to the contract to insert in the policy express provisions for its forfeiture, and that such provisions, when made a part of the contract itself, are valid.

In this entire case, from the petition to final judgment, there is not one word stating or showing that Munger, either within "six days" next after the fire, or at any other time, gave any notice, oral or written, to the company, until his pretended proofs of loss, made on 28th February, 1888, were forwarded to Chicago, and respecting which General Agent Burch wrote to Munger on 5th March, 1888. True, in his petition, Munger alleges that "after said loss he performed each and all of the matters and things required of him to be done by the terms of said policy, and has and did perform all the conditions precedent on his part, except," etc. He thus shows that he knew what was required of him. But this allegation was denied by the defendant, and at the trial he neither proved nor offered to prove that he had given or served any "notice" at all.

The powers of a mere local or soliciting agent are not so extensive respecting *contracts already made* as in negotiations prior to the issuing of the policy; and several recent cases decide that the local agent has no power to change, modify *or waive* the conditions of policies already issued requiring the assent of the company to any change which affects the risk

·or liability of the company: *Kyte v. Assurance Company*, 144 Mass. 43; *Queens Insurance Co. v. Young*, 5 So. Rep. 116. The following cases in effect decide the same way: *Bush v. Fire Insurance Company*, 63 N. Y. 531; *Wilson v. Insur- ·ance Company*, 14 id. 418; *Sohnes v. Insurance Company*, 121 Mass. 439; *Reynolds v. Insurance Company*, 36 Mich. 131.

In determining the authority of an insurance agent in any ·particular matter, regard must be had to the manner in which he is held out by the company, and the character of the author- ity known to have been granted. See numerous cases cited in note 1, page 351, of Am. & Eng. Encyc. of Law, and *South- ern Life Insurance Co. v. McCain*, 96 U. S. 84. Nowhere in the record in this case does it appear that the defendant com- pany, by word or act, or even by silence, held out to Munger ·or to any one else that Bell was authorized to speak or act for the company in any way beyond the plain letter of his com- mission. The case of *Melleville Fire Insurance Co. v. Me- ·chanics' Association*, 43 N. J. L. 458, and other cases where the "policy contained no limitation upon the agent's author- ity," are not applicable to this case.

Munger knew that no waiver in writing of any clause was indorsed upon the policy. He therefore acted, or omitted to ·act, at his peril. On this question the authorities are uni- form:

"Notice to an agent is notice to the principal only when it is accepted while engaged in the business of the principal, within the scope of his authority, and respecting a transac- tion then depending." *Hill v. Helton*, 80 Ala. 528. See, also, Wood, Ins., 2d ed., §§ 410, 411, 417, 420, 421, 423; *Bouton v. American Insurance Co.*, 25 Conn. 542; *Mersereau v. Insur- ance Company*, 66 N. Y. 274, 279; 1 Pars., Contr., 61; *Coley v. Willard*, 34 Ill. 69; *Whitehead v. Trickett*, 15 East, 400; *Or- mond v. Mutual Life Association*, 1 S. E. Rep. 796; May, Ins., 156; *Walsh v. Hartford Insurance Co.* (N. Y. Ct. App.), 7 Ins. L. J. 423; *Birmingham Insurance Co. v. Kroegher*, 83 Pa. St. 64; *Gladding v. Insurance Association*, 13 Ins. L. J. 893; *First National Bank v. Lancashire Insurance Co.*, 14 id. 278; *Kyte v. Commercial Union Assurance Co.*, 10 N. E.

Rep. 518; *Hankins v. Rockford Insurance Co.*, 35 N. W. Rep. 34.

The case of *McPike v. Western Assurance Co.*, 61 Miss. 37, lays down the rule that the burden of proving that there has been a waiver of the proofs of loss is upon the insured. It must now be regarded as a well-settled principle of law, that a local agent cannot waive proofs of loss. In the case of *Sohnes v. Insurance Company of North America*, 121 Mass. 438, evidence that the agent received applications, took risks, settled rates of premium, and issued policies for the defendant, *held* not proof that he was the general agent, authorized to waive preliminary proofs required by the policy. See cases in 9 Allen, 231; 13 Gray, 79, and 12 Gray, 535. See, also, *Bush v. Westchester Fire Insurance Co.*, 63 N. Y. 531; *Bowlin v. Hecla Fire Insurance Co.*, 16 Ins. L. J. 305.

The clause in the policy prohibiting an agent from limiting or modifying any of the conditions in the policy has been sustained in many other decisions. See *Clever v. Insurance Company*, 32 N. W. Rep. 660; *Enos v. Insurance Company,* 8 Pac. Rep. 379; *Smith v. Niagara Insurance Co.*, 17 Ins. L. J. 734; *Briggs v. Fireman's Fund Insurance Co.*, 31 N. W. Rep. 616; *Diball v. Ætna Life Insurance Co.*, 32 La. An. 179.

That proofs of loss are essential, see *Worseley v. Wood*, 6 T. R. 710; *Welcome v. People's Insurance Co.*, 2 Gray, 482; *McDermott v. Lycoming Insurance Co.*, 44 N. Y. 228; Wood, Ins., §§ 436, 437; May, Ins., §§ 464, 465; *Owen v. Farmers' Insurance Co.*, 57 Barb. 521; *Dohin v. Farmers' Insurance Co.*, 5 Lans., 275; *Planters' Mutual Insurance Co. v. Deford*, 38 Md. 400; *Adams v. Nichols*, 19 Pick. (Mass.) 275; *Harmony v. Bingham*, 12 N. Y. 99; 2 Wood, Ins., 2d ed., p. 947; *Hibernia Insurance Co. v. O'Connor*, 29 Mich. 241; *Campbell v. Association Company*, 4 Irish Common Law, 204; *Smith v. Haverill Mutual Fire Insurance Co.*, 1 Allen (Mass.), 297; *Cornell v. Milwaukee Mutual Fire Insurance Co.*, 18 Wis. 387; *Knickerbocker Insurance Co. v. Gould*, 80 Ill. 388; *Brink v. Hanover Fire Insurance Co.*, 8 Ins. L. J. 707; *Lycoming Co. Mutual Fire Insurance Co. v. Beatty*, 66 Pa. St. 9; *L. L. & G.*

*Insurance Co. v. Sorsby*, 60 Miss. 302; *Forest City Insurance Co. v. School Directors*, 4 Bradwell, 145; *McCaul v. Merchants' Insurance Co.*, 33 La. An. 142; *Blossom v. Lycoming Insurance Co.*, 64 N. Y. 162; *McDermott v. Lycoming Fire Insurance Co.*, 12 Jones & Sp. 221; *Home Insurance Co. v. Lindsley*, 26 Ohio St. 346; *Cameron v. Canada F. & M. Insurance Co.*, 6 Ont. 392; *Farmers' Insurance Co. v. Frick*, 29 Ohio St. 466.

*Homer Kennett, Jay F. Close*, and *N. T. Van Natta*, for defendant in error:

Whatever construction may be given to this policy, it does not admit of a doubt that there is no condition or stipulation therein limiting the authority of Bell, who signed the policy as agent, who was the agent named as such in the policy itself, and who had everything to do with it until months after the fire. Whatever restriction may be found upon the agent's authority, there is none as to proof of loss, or any other condition after loss. All that there is, is in the last part of the sixth condition or clause of this voluminous contract, which in effect provides that any agent may waive, alter, etc., by "distinct, specific agreement, clearly expressed and indorsed." "There can be no more force in an agreement in writing not to agree by parol, than in a parol agreement not to agree in writing." *Insurance Company v. Earle*, 33 Mich. 143. Consequently, when the company has given the power to an agent to waive or alter a contract, it cannot effectually stipulate that it shall be in writing. The law does not tolerate such foolishness, if the agent has authority to waive or alter, he represents the company in such waiver or alteration, and may alter or waive the contract as to written indorsement as well as any other part of it.

But, more than all this, if it were possible to torture this condition into a limitation of the agent's authority, it would and could be nothing more than a limitation as to those conditions which affect the contract while it is running, and not as to any of those which arise after the loss. *New Orleans In-*

*surance Ass'n v. Mathews*, 62 Miss. 430; *O'Brien v. Ohio Insurance Co.*, 17 N. W. Rep. (Mich.) 726; *Indiana Insurance Co. v. Capehart*, 8 N. E. Rep. 285; *Wheaton v. North British and Mercantile Insurance Co.*, 18 Pac. Rep. (Cal.) 758; *Franklin Fire Insurance Co. v. Chicago Ice Co.*, 36 Md. 102; *Rokes v. Amazon Insurance Co.*, 34 Am. R. (Md.) 323; *Insurance Company v. Ice Company*, 36 Md. 102; *Blake v. Insurance Company*, 12 Gray, 265; *New Orleans Insurance Co. v. Mathews*, 4 So. Rep. 62; *Travelers Insurance Co. v. Harvey*, 5 S. E. Rep. 553, and many others. In this policy, the only condition precedent in relation to proofs of loss is, that the money shall not be due until 60 days after such proofs as are required by the company are received at its office in Chicago. This condition was complied with twice. Generally, when delay in making proof is due to the acts of the company or its agents, strict compliance as to time is waived. 2 Wood, Ins., 942, 979.

Bell had a right to waive any and all conditions of the policy providing he did it by indorsement; and the policy itself implies it, and there is nothing in his commission to prohibit it. This same policy was passed upon by the supreme court of Mississippi in *Phenix Insurance Co. v. Bowdrie*, 7 So. Rep. 596, where it was held the waiver might be made without indorsement. We have already stated that such an attempt at restriction amounts to nothing, but there is still another reason why this is void. It provides that no agent can alter, etc. Now the company can only act through some agent; consequently it would prevent the company itself from acting. *Lamberton v. Connecticut Fire Insurance Co.*, 39 N.W. Rep. 76.

" Where an agent is entrusted with policies signed in blank, and is authorized to issue them upon the application of parties seeking insurance, he is thereby clothed with apparent authority to bind the party in reference to any condition of the contract, whether precedent or subsequent, and may waive notice or proofs of loss, and may bind the company by his admission in respect thereto." 2 Wood, Ins., §§ 419, 447. See, also, Bliss, Life Ins., § 277; *Continental Insurance Co. v. Ruckman*, 20 N. E. Rep. 77; *Murphy v. Southern Life Insurance Co.*, 11 Am.

R. 761, 766; *Phenix Insurance Co. v. Bowdrie,* 7 So. Rep. 596; 4 id. 62; *Insurance Company of North America v. Hope,* 11 Am. R. 48; *British Mercantile Insurance Co. v. Crutchfield,* 9 N. E. Rep. 458.

If the proofs of loss could have been served on Bell, of course he could waive the service. This court has decided, in *Insurance Company v. McLanathan,* 11 Kas. 533, that "an agent authorized to issue policies of insurance and consummate the contract binds his principal by any act, agreement, representation or waiver within the ordinary scope of the insurance business which is not known to the assured to be outside the authority granted to the agent." See, also, *National Mutual Fire Insurance Co. v. Barnes,* 21 Pac. Rep. 165. If this had been a jury trial, the only possible error would have been as to the evidence of custom; but that, we insist, would then have been competent to show that Munger did believe that Bell was authorized to deal with him after the loss and waive the proofs, and that his belief was in part founded upon this custom which the defendant was shown to have participated in. Again, it was claimed that Bell never did do these things, one reason being that he was not authorized. This evidence that insurance agents were continuously ( Bell among them) doing so, tends to show and prove that he did. But it makes no difference; even if this evidence would have been erroneous before a jury, it is not so as to the court. The test, upon review of trials before the court, is whether there is any competent evidence upon which the decision could have been made.

Opinion by GREEN, C.: This was an action brought by Frank N. Munger against the Phenix Insurance Company of Brooklyn, on a policy of insurance for $1,000, issued by the latter on a barn and carriage house belonging to the former. The insured property was destroyed by fire on the 24th day of November, 1887. The plaintiff's petition contained the following allegations as to the performance of all conditions precedent and notice to the company of the loss:

"That after said loss plaintiff performed each and all of

the matters and things required of him to be done by the terms of said policy of insurance, and has and did perform all the conditions precedent on his part, except that he did not within 30 days after the loss make and forward to said company a verified statement of said loss as provided for in said policy; but plaintiff says that within 10 days after the said fire, and after said company had been duly notified of said loss, plaintiff applied to W. H. Bell, the agent for the company at Belleville, Kas., and who made said contract of insurance with said plaintiff, and who was their authorized agent to issue policies of insurance for said company and consummate the contract, who informed the plaintiff that it was of no use to make a verified statement of the loss by said fire; that said company did not insist on those provisions in their policy, and that the company would pay said loss in a few days; that plaintiff, relying on what said Bell told him, did not make out a verified statement of said loss within 30 days after said loss, but thereafter, and in the month of March, 1888, he learned that the said company claimed that proof of loss, duly verified, with the certificate of a magistrate and of a builder, should have been sent, notwithstanding the waiver of the same by said W. H. Bell; and said Munger then, and on or about the 16th of March, 1888, made out and forwarded by mail to said company's western department office at Chicago a duly-verified proof of loss, with certificate of a magistrate and of a builder thereto attached, as required by said policy, and the same was received by said company; that if the said Bell did not have the authority to waive the requirements of said policy relative to proof of loss, plaintiff did not know it, but on the contrary supposed he had such authority."

The insurance company answered, and set up six defenses. The first and second defenses alleged that Munger misrepresented the facts as to the ownership of the land upon which the insured property stood. The third defense was, that Munger had failed to comply with the conditions of the policy, which required him within 30 days after the loss to make proof and submit it to the defendant company, and that by reason of such failure the policy became void. The fourth defense averred that "W. H. Bell was not their authorized agent to adjust or settle losses, and that he never had any authority delegated to him by said company defendant to adjust

or settle the loss claimed by plaintiff, or to waive the terms or conditions of said contract, as provided by condition 6 in said policy," which reads as follows:

"6. . . . It is understood and agreed, that agents of this company have no authority, in any manner, or by any act or omission whatsoever, either before or after making this contract, to waive, alter, modify, strike from this policy, or otherwise to change any of its conditions or restrictions, except by distinct specific agreement clearly expressed and indorsed hereupon and signed by the agent making it. Nor shall silence upon receipt of notice of breach of any condition or restriction herein, or failure to declare this policy forfeited thereby, or the issuance of any renewal or new policy, or the acceptance of any premium or other money, or any other act or omission whatever, by any agent of this company, whether with or without the knowledge of such breach, or whether before or after the making of this contract, work any waiver of any such conditions or restrictions, or effect any estoppel against this company, or deprive it of any forfeiture or defense, either in law or in equity, to any action upon this policy."

The plaintiff's amended reply alleged that he requested W. H. Bell to write to the defendant and ask it to give his loss attention and adjust the same, and that the general agent of the defendant wrote Bell, within 30 days after the loss, that the plaintiff's loss would have attention and be adjusted, which letter was shown to the plaintiff, and he relied on the promise of the general agent, as well as its local agent, so made to him, as he had alleged in his petition, notwithstanding the verified proof of loss was not sent to the company within 30 days after the fire. The case was tried by the court, and resulted in a judgment for the plaintiff for the amount of the policy and interest. The insurance company brings the case here.

The controlling question in this case is, whether or not the insurance company waived any of the written conditions of the policy requiring the assured to give notice of loss, and render an account of the same to the company within 30

days after the fire.    To establish a waiver, the plaintiff testified over the objection of the defendant that —

"Mr. Bell told me it was not necessary; that he never had made proofs of any losses that he had had in town, and that none of the companies doing business here ever made proofs that he knew of. He told me that he had notified the company of the loss, and that there would undoubtedly be an agent here in a very few days to attend to it.   He also cited me to a building on the corner that he had a risk on; that they made no proof, and that the adjuster had been here and adjusted the loss.   Told me it would be better to let it stand until the adjuster came, and then if he required proof I could make it, or he could ask me any questions he saw fit about the fire."

To further establish the fact of a waiver, the plaintiff placed W. H. Bell, the agent of the company, upon the witness-stand, who testified that his business was "real estate, farm loans, and insurance."   He designated four insurance companies for which he was agent: The Insurance Company of North America, the Farmers', the Connecticut, and the Phenix of Brooklyn; that he had never before had a loss under a policy issued by the latter company.

The next witness called by the plaintiff was Geo. S. Simonds, who had been local or recording agent for different insurance companies for about 10 years.   The witness was then asked if he was familiar with the practice and rules of insurance business in reference to losses, and the conduct of the business after a loss had occurred, in the vicinity of Belleville. Objection was made to this question, and the court asked counsel what he wanted to show by this question.   The following appears in the record:

"Mr. Kennett [Munger's counsel]: We wish to show by this witness that the custom of insurance companies in this vicinity is to never require proofs of loss until an examination has been made by an adjuster, and that provision of the policy is never insisted upon.   Objected to by defendant as being incompetent, irrelevant, and immaterial, which objection was by the court overruled, to which ruling the defendant excepted.

"A. I do, so far as I have been connected with them, my companies, companies which I represent.

"Q. You may state what the custom of insurance companies is, in this neighborhood, in reference to requiring proofs of loss, and whether such proofs are or are not required before examination is made by the adjuster? Objected to by defendant as being incompetent, irrelevant, and immaterial, which objection was by the court overruled, to which ruling the defendant excepted.

"A. I have never known of a case wherein it has been required until this case; never has one come to my knowledge.

"Q. Have you been familiar with the facts and circumstances and the adjustment of insurance losses that have occurred in this vicinity since your residence here? A. I have, in several instances.

"Mr. England: We object to the question because it is incompetent, irrelevant, and immaterial, and move to strike out the answer for the same reasons; which objection and motion were by the court overruled, to which ruling defendant excepted."

Other evidence of like import was admitted, over the defendant's objections.

We are clearly of the opinion that this evidence was incompetent, and prejudicial to the rights of the defendant. The plaintiff was attempting to establish a waiver of certain conditions imposed by an express contract entered into by him and the defendant. The evidence could not by any fair interpretation be made to extend beyond the custom of the party making the contract. In other words, the defendant could not be bound by the usage and custom of other companies doing business in the vicinity, where it had expressly contracted for the performance of a certain condition precedent before the plaintiff would be entitled to recover. We think evidence would be admissible as to the usage and custom of the defendant in the vicinity, in regard to the waiver of the proof of loss, but we know of no rule by which it could be bound by the practice and usage of other insurance companies in the same locality.

In the case of *Insurance Co. v. Norton*, 96 U. S. 234, Mr. Justice Bradley, in speaking for a majority of the court, said: "As denoting the power given by an insurance company to a

local agent, evidence is admissible as to its practice in allow-
ing him to extend the time for the payment of premium notes;
and the jury, upon such evidence, may find whether he was
authorized to make such an extension, and, if so, whether it
was in fact made in the case on trial." Where there is an ex-
press contract, we do not think it can be varied by the custom
of other parties.

In *Graham v. Trimmer*, 6 Kas. 237, it was said: "It is,
however, to be remarked that evidence of the nature referred
to will not have the effect of changing or affecting an express
contract of the parties in regard to the subject-matter to which
it is directed."

In *Stout v. McLachlin*, 38 Kas. 120, the rule is stated:
"The proof of usage can only be received to show the inten-
tion or understanding of the parties in the absence of specific
agreement or to explain the terms of a written contract."

In the case of *Barnard v. Kellogg*, 10 Wall. 390, Mr. Jus-
tice Davis said:

"The proper office of a custom or usage in trade is to as-
certain and explain the meaning and intention of the parties
to a contract, whether written or in parol, which could not be
done without the aid of this extrinsic evidence. It does not
go beyond this, and is used as a mode of interpretation, on the
theory that the parties knew of its existence, and contracted
with reference to it. It is often employed to explain words
or phrases in a contract of doubtful signification, or which
may be understood in different senses, according to the sub-
ject-matter to which they are applied."

But if it be inconsistent with the contract, or expressly or
by necessary implication contradicts it, it cannot be received
in evidence to affect it. "Usage," says Lord Lyndhurst,
"may be admissible to explain what is doubtful; it is never
admissible to contradict what is plain."

In the case of *Summons v. Law*, 3 Keys, 219, the court
said: "A clear, certain and distinct contract is not subject to
modification by proof of usage. Such a contract disposes of
all customs by its own terms, and by its terms alone is the

conduct of the parties to be regulated, and thus their liability to be determined."

The supreme court of Illinois held, in the case of *Dixon v. Danham*, 14 Ill. 324, that no usage or custom could be admitted in evidence to vary or control the express terms of a contract, but that evidence might be admitted to determine that which by the terms of the contract was left undetermined.

In the case of *Schooner Reeside*, 2 Sumner C. C. R. 567, Mr. Justice Story stated the correct rule when he said: "The true and appropriate office of a usage or custom is to interpret the otherwise undeterminate intention of the parties, and to ascertain the nature and extent of their contracts, arising not from the express stipulations, but from mere implications and presumptions, and acts of a doubtful or equivocal character." As sustaining this doctrine, see Clark's Brown on Usage and Customs, 83, and authorities there cited; Lawson on Usages and Customs, 435; *Partridge v. Insurance Company*, 15 Wall. 375.

In this case there was a written contract, expressing what was to be done by the parties; and we do not think this agreement could be modified by the custom of other insurance companies or their agents, in regard to dispensing with proofs of loss. If it had been the custom and usage of the plaintiff in error not to require these proofs of loss, the evidence might be competent, for the purpose of indicating the power given by the company to its agents to waive such requirements, as stated in the case of *Insurance Company v. Norton*, supra; but beyond that we do not think the rule should be extended.

1. Fire insurance — proof of loss — waiver — custom and usage.

As this case must go back to the district court for another trial, and the question of the authority of the agent of the plaintiff in error is one of the controlling questions in the case, it becomes necessary for us to determine the nature and extent of his authority. In speaking of such agents, Mr. Justice BREWER said, in the case of *American Central Insurance Co. v. McLanathan*, 11 Kas. 549:

"The bulk of the fire insurance business of this state is

13—49 KAS.

done by eastern companies, which are represented here by agents. These agents are authorized to issue policies of insurance, and the entire consummation of the contract is intrusted to them. Blank policies, signed by the home officers of the company, to be filled up and issued, and to be binding when countersigned by the agent, are placed in their hands. It is a matter of no small moment, therefore, that the exact measure and limit of the powers of these agents be understood. All the assured knows about the company is generally through the agent. All the information as to the powers of and limitations upon the agent is received from him. Practically, the agent is the principal in the making of the contract. It seems to us, therefore, that the rule may be properly thus laid down, that an agent authorized to issue policies of insurance, and consummate the contract, binds his principal by any act, agreement, representation, or waiver, within the ordinary scope and limit of insurance business, which is not known by the assured to be beyond the authority granted to the agent."

In the case of *Insurance Company v. Gray*, 43 Kas. 497, this case was followed, and it was held in that case that—

"An insurance company might, through its agents, by a parol contract, waive provisions stated in the policy with reference to the manner of altering or waiving its terms and conditions. In *Insurance Company v. Earle*, 33 Mich. 143, the court, in considering the question whether an agent of a company might change by parol the conditions of a policy wherein it was provided that it could only be done upon the consent of the company written thereon, held, that the written policy might be changed by parol, and stated that 'a written bargain is of no higher legal degree than a parol one. Either may vary or discharge the other, and there can be no more force in an agreement in writing not to agree by parol, than in a parol agreement not to agree in writing. Every such agreement is ended by the new one which contradicts it.'"

It is claimed that, by the sixth condition in the policy, agents of the company have no authority to make any changes except by distinct agreements in writing, indorsed on the policy, and signed by the agent making them. The answer to this contention is that a corporation can act only through

its agents. The limitation and restriction is too broad and sweeping. "Agents of this company have no authority in any manner or by any act or omission," etc., is the language of the restrictive proviso. What agents or officer can change or modify the terms of a policy unless it be in writing and indorsed thereon? Not the president; he is but an agent, with extended powers; not the general agent, because he is only an agent with less power, perhaps, than the president. "A contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further action or agreement, contrary to the terms of the written contract." (*Lamberton v. Connecticut Fire Insurance Co.*, 39 Minn. 129.)

"The fact that a policy is written does not prevent its change by subsequent parol agreement. Any written contract not within the statute of frauds may be changed by parol." (*Insurance Co. v. Earle*, supra; *Seamen v. O'Hara*, 29 Mich. 66.) This rule has been applied to the enlargement and continuance of policies of insurance. (*Kennebec Co. v. Augusta Insurance Co.*, 6 Gray, 209; *Baptist Church v. Brooklyn Fire Insurance Co.*, 19 N. Y. 305.)

Upon the question of the power of an agent to waive proof of loss, the rule is laid down in Wood on Fire Insurance, § 419:

"Where an agent is entrusted with policies signed in blank, and is authorized to issue them upon the application of parties 2. General agent seeking insurance, he is thereby clothed with ap- —powers. parent authority to bind the party in reference to any condition of the contract, whether precedent or subsequent, and may waive notice or proofs of loss, and may bind the company by his admissions in respect thereto."

Again, the same author says:

"Although the policy specially provides that preliminary proof of loss shall be made in a particular mode, and within a certain limited time, yet the company may, *through its agents, even*, waive the benefits of the provisions, and a waiver may be implied from the manner in which the company or its

agents have dealt with the policy-holder subsequent to the loss; and where there is no dispute as to the facts, the question as to whether compliance with such preliminaries has been waived is one of law for the court." (Section 447.)

See, also, Bliss, Ins., § 296; *Phenix Insurance Co. v. Bowdrie*, 7 So. Rep. 597; *Insurance Company v. Colt*, 20 Wall. 560.

We think the commission of W. H. Bell from the plaintiff in error constituted him a general agent of the company at Belleville, with full power to receive proposals for insurance against loss and damage by fire, to fix rates of premium, receive moneys, and countersign, issue and renew policies. As stated in the case of *Insurance Company v. Gray*, supra, he fully represented the company within a certain district. He was authorized to do business for the plaintiff in error at Belleville and vicinity. All the knowledge the insured had of the company at the time he obtained his policy and sustained the loss was through this agent.

In the case of *Rivara v. Insurance Company*, 62 Miss. 728, it was said:

"The powers of insurance agents to bind their companies are varied by the character of the functions they are employed to perform. Their powers in this respect may be limited by the companies, but parties dealing with them as to matters within the real or apparent scope of their agency are not affected by such limitations unless they had notice of the same. An insurance agent clothed with authority to make contracts of insurance, or to issue policies, stands in the stead of the company to the assured. His acts and declarations in reference to such business are the acts and declarations of the company. The company is bound, not only by notice to such agent, but by anything said or done by him in relation to the contract or risk, either before or after the contract is made."

The judgment of the district court should be reversed, and a new trial granted, upon the first assignment of error discussed in this opinion.

By the Court: It is so ordered.

All the Justices concurring.