THE SHAWNEE FIRE-INSURANCE COMPANY V.
E. I. KNERR.

No. 14,331.    (83 Pac. 611.)

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE—*"Iron-safe"* Clause—Condition Precedent.
   The "iron-safe" clause in the policy under consideration is a
   condition the performance of which is a prerequisite to the
   right of the insured to maintain an action on the policy.

2. ——— Investigation of Loss—Non-waiver Agreement—Con-
   dition Not Waived. The acts of an adjuster while investi-
   gating under a non-waiver agreement the cause of a fire
   and the amount of loss sustained cannot be construed into
   a waiver by the company of its right to insist that the policy
   was void because of the non-compliance with the "iron-safe"
   clause contained therein.

3. ——— Performance of Conditions — Pleading and Proof.
   In an action to recover on an insurance policy the plaintiff
   must plead and prove the performance of all conditions
   precedent, or a waiver by the insurer. Where performance
   is pleaded a general denial puts in issue the performance of
   all such conditions.

Error from Dickinson district court; R. L. KING,
judge. Opinion filed December 9, 1905. Reversed.

*Mulvane & Gault,* and *G. W. Hurd,* for plaintiff in
error.

*Edward C. Little,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: On the 7th day of October, 1903, Mrs.
E. I. Knerr, being the owner of a general stock of
merchandise contained in a building situated in Man-
chester, Kan., procured a policy of insurance in the
Shawnee Fire-insurance Company, of Topeka, Kan.,
on the stock in the sum of $2000. On the night of
February 2, or the morning of February 3, 1904, the
stock was totally destroyed by fire. The company
paid the plaintiff $1500 by way of settlement. This

25—72 KAN.

action was brought to recover the remaining $500 of the policy, on the ground that the settlement was obtained by duress. Of the many questions argued by the plaintiff in error, the one that is decisive of the case in this court arises under the following condition of the policy:

"The assured under this policy hereby covenants and agrees to keep a set of books showing a complete record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually opened for business, or in some secure place not exposed to a fire which would destroy the house where such business is carried on; and, in case of loss, the assured agrees and covenants to produce such books and inventory, and in the event of a failure to produce the same this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

The insured neglected to keep a safe. She permitted the books used in conducting the business to remain in the store where the insured stock was kept at night, where they could not escape destruction if the stock and building burned. The building and stock were destroyed by fire on February 2 or 3, 1904. The ledger, the cash-book, the day-book of credit sales, the bank-book, the invoices—in fact, all of the books pertaining to the business, except a book called a "ledgerette," which is said to have contained the credit accounts—were in a desk in the building and were destroyed.

The company contends that by the failure of the insured to comply with this condition of the contract of insurance she forfeited her right to recover anything under the policy. This provision was inserted in the policy so that if a fire should occur the company would have some data from which it might approximate the

actual value of the stock destroyed. It is not an unreasonable precaution; it is one with which the insured might very easily have complied. In any event, the parties making the contract agreed that it should be performed by the insured, and since it is a part of the contract it cannot be ignored or arbitrarily set aside. It is generally held that neglect on the part of the insured substantially to comply with a clause in an insurance policy to keep the books used in conducting the insured's business in an iron safe, or in some place where they will not be destroyed in case the place in which the insured stock is kept is consumed by fire, will avoid the policy. (*Hanover Fire Ins. Co. v. Crawford*, 121 Ala. 258, 25 South. 912, 77 Am. St. Rep. 55; *Shoe Co. et al. v. Insurance Co.*, 8 Tex. Civ. App. 227, 28 S. W. 1027; *Standard Fire Ins. Co. v. Willock*, 29 S. W. [Tex. Civ. App.] 218; *Goldman et al. v. Insurance Co.*, 48 La. Ann. 223, 19 South. 132; *Keet-Rountree Drygoods Co. v. Ins. Co.*, 100 Mo. App. 504, 74 S. W. 469.) We see no good reason for not adhering to this rule in the present case.

The binding force of this clause and the consequent effect on the plaintiff's right to recover in case of noncompliance therewith are not strongly denied. The insured contends that the company, by the conduct of its agents and adjuster, waived the performance of this condition. The fire occurred in the night of February 2, or early in the morning of February 3, 1904. Notice was given the company, and its adjuster appeared in response thereto on the morning of February 8. After the most common preliminary talk about the fire and the loss, and a disclosure that the books were destroyed, the adjuster refused to enter into a general investigation looking to an adjustment until the insured would sign a non-waiver agreement. Knerr, who was acting for his wife, hesitated to sign such an agreement until he had consulted a lawyer; and after having consulted his lawyer and his wife,

the plaintiff, he returned and both parties signed the following agreement:

"NON-WAIVER AGREEMENT.

"It is hereby mutually understood and agreed by and between E. I. Knerr, of the first part, and the Shawnee Fire-insurance Company, of Topeka, Kan., and other companies signing this agreement, part— of the second part, that any action taken by said party of the second part in investigating the cause of fire or investigating and ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on February 3, 1904, shall not waive or invalidate any of the conditions of the policy of the party of the second part, held by the party of the first part, and shall not waive or invalidate any right whatever of either of the parties to this agreement.

"The intent of this agreement is to preserve the rights of all parties hereto, and provide for an investigation of the fire and the determination of the amount of the loss or damage without regard to the liability of the part— of the second part.

"Signed in duplicate, this 8th day of February, 1904."

By the terms of this agreement the insured said to the company: "Your acts while investigating the cause of the fire and the amount of damage or loss sustained shall not be construed into a waiver on your part of the performance by me of any of the conditions of the policy—either those which should have been performed in the past or those which it may become my duty to perform in the future." The acts of the company while investigating these two questions must be construed with reference to this agreement. Thus construed, there is no evidence of a waiver by the company of conditions which should have been performed by the insured previous to the fire.

It is also contended that the company's local agent, who insured the property, was perfectly familiar with the store and the stock carried by the insured, and knew when he issued the policy that the insured had no iron safe and did not keep one in the store and

could not comply with the condition, and, therefore, that the acceptance of the risk with this knowledge estopped the company to plead the non-performance of this condition of the policy. The clause referred to required the insured to keep the books in a fire-proof safe in the building at night and at all times when the store was not open for business, or in some secure place not exposed to a fire that would destroy the house where such business was conducted. Conceding that the agent issuing the policy was familiar with the insured store building and stock, and knew that the insured did not keep an iron safe, and that he issued the policy knowing the existence of these conditions, that could not be construed into a waiver of the obligation of the insured to keep the books at night, and when the store was not open for business, in some secure place not exposed to a fire that would destroy the building in which the insured property was kept.

From any view that may be taken, we are unable to sustain the judgment of the court below. It is therefore reversed, and the cause remanded for further proceedings.

All the Justices concurring.

---

OPINION DENYING A PETITION FOR A REHEARING.
(83 Pac. 613.)

The opinion of the court was delivered by

GREENE, J.: One of the contentions of the defendant in error on her motion for a rehearing is that non-performance of the conditions of the iron-safe clause in the contract of insurance was not pleaded by the insurer as a forfeiture of the policy, and that the original opinion was written upon a question not in issue by the pleadings.

The rule of pleading in such cases was not given much attention in the original opinion because the court did not think it required special mention. For

this reason it is thought best to refer to this rule more at length now. The petition contained the policy, and averred the performance of all of its conditions, one of which was the iron-safe clause. To this petition the insurance company filed a general denial, and pleaded other separate defenses. Before the plaintiff could recover she would be compelled to plead and prove the performance on her part of all conditions precedent, or a waiver of such conditions on the part of the company. The denial of the defendant put in issue the allegations of performance of these conditions. (*Surety Co. v. Bragg,* 63 Kan. 291, 65 Pac. 272.) The rule of pleading in such actions is thus stated in volume 11 of the Encyclopedia of Pleading and Practice, at page 422:

"Where the code practice obtains the defendant may show, under a general denial, breach of conditions precedent, such as failure to give notice or proofs of loss, or that the loss or cause of the loss was not within the purview of the contract; but he cannot show a breach of conditions, representations or 'warranties' not conditions precedent, or facts showing a right to avoid the policy, such as a wilful burning of the insured property by the plaintiff."

"A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend. In the case of a mere warranty, the contract takes effect and becomes operative immediately. It is true that, where a policy of insurance so provides, if there is a breach of a warranty, the policy is void *ab initio.* But this does not change the warranty into a condition precedent, as understood in the law. It lacks the essential element of a condition precedent, in that it contains no stipulation that an event shall happen or an act shall be performed in the future, before the policy shall become effectual." (*Chambers v. Northwestern Mutual Life Ins. Co.,* 64 Minn. 495, 67 N. W. 367, 58 Am. St. Rep. 549.)

The performance of the requirements of the "iron-safe" clause being a condition precedent, the plaintiff was required to plead and prove it.

In the application for a rehearing it is insisted that this decision conflicts with the case of *Insurance Co. v. Milling Co.*, 69 Kan. 114, 76 Pac. 423. There was no principle involved in that case akin to the question decided here. In that case the insurance company in its answer pleaded certain conditions in the policy, the non-compliance with which by the insured it claimed was a forfeiture of its right to recover. To this defense the insured demurred, and the demurrer was sustained. The cause was brought to this court upon that question. The condition set up in the answer did not declare that the non-compliance therewith would forfeit the policy, and it was held, since no provision for a forfeiture was contained in the condition, that the demurrer was properly sustained.

The petition for a rehearing is denied.

All the Justices concurring.