PHENIX INSURANCE COMPANY V. JOHN STAHL.

No. 14,412.    (83 Pac. 614.)

SYLLABUS BY THE COURT.

1. FIRE-INSURANCE — *"Iron-safe" Clause — Non-waiver Agreement—Defense to Policy.* Where a stock of merchandise is insured against fire by a policy containing what is known as the "iron-safe" clause, requiring certain books and documents pertaining to the business to be kept at night in an iron safe, and a fire occurs in which some of the documents are destroyed by reason of the failure of the insured to comply with the terms of such clause, the insurance company does not lose the right to make a defense upon that ground by requesting the production of other evidence to supply that so destroyed, and by making an examination thereof with a view to determining the amount of the loss, where before the insured is put to any inconvenience or expense in that connection he enters into a written agreement with the agent of the insurance company providing that such examination should not be deemed a waiver of any of its rights under the policy.

2. ———— *Parol Evidence — Written Agreement.* In the circumstances stated in the foregoing paragraph the liability of the company is not affected by the fact that before such non-waiver agreement is signed the representative of the company tells the insured what documents would be desired for examination in lieu of those destroyed, and also tells him that if such documents are produced by him after the execution of such agreement the loss will be paid.

Error from Brown district court; WILLIAM I. STUART, judge. Opinion filed January 6, 1906. Reversed.

*J. G. Slonecker, Buckles & Pearl,* and *Reed, Yates, Mastin & Howell,* for plaintiff in error.

*James Falloon,* for defendant in error.

The opinion of the court was delivered by

MASON, J.: John Stahl insured a stock of merchandise against fire in the Phenix Insurance Company. The policy contained what is known as the "iron-safe" clause, requiring certain books and documents pertaining to the business to be kept in an iron safe at night and at other times when the building containing the goods was closed, and providing that a failure on the part of the insured to comply with this condition should avoid the policy. A loss occurred and some of the documents referred to were destroyed by reason of the neglect of the insured to place them in the safe, according to the terms of the clause mentioned. An adjuster for the company visited the scene of the fire, was informed in a general way of the situation, and suggested that other documents might be accepted in lieu of those destroyed, but refused to proceed further until Stahl should sign a "non-waiver agreement," reading as follows:

"John Stahl, assured under policy 21,054 of the Phenix Insurance Company, of Brooklyn, N. Y., . . . hereby requests A. E. Pinkney, adjuster, to make examination of books and papers and other evidences of loss (including assured's sworn statements, if deemed necessary), which he submits to him for the purpose of ascertaining the amount of loss sustained by assured on stock of merchandise, . . . with the express understanding and agreement that such examination shall not be considered an acknowledgment of any liability of the said Phenix Insurance Company, of Brooklyn, N. Y., under said policy, nor a waiver or impairment of any of the rights or defenses of said company under said policy, nor a waiver

or impairment of assured's obligations thereunder. It is further understood and agreed that any legal rights, if any, the said John Stahl may have under said policy are not impaired by his act in signing this request."

This agreement, after some discussion, was executed by both parties. Proofs were then submitted and examined, but the company finally refused payment. The insured brought an action upon the policy and recovered a judgment, from which the defendant prosecutes error.

The judgment can be sustained only in case there was some evidence tending to show that the insurance company had waived the right to claim the benefit of the failure on the part of the insured to observe the provisions of the iron-safe clause. The evidence relied upon by the defendant in error as having this effect was in substance that before the non-waiver agreement was signed the company by its adjuster instructed Stahl what proofs he would have to submit in order to have his claim considered, and stated that if he would make such proofs after signing the agreement the company would settle with him and pay his loss; and that afterward he did furnish all the proofs required of him. While there was some talk about the matter of making proof of loss before the non-waiver agreement was signed, nothing was in fact done toward an adjustment until afterward. In this aspect the case is the exact counterpart of *Insurance Co. v. Knerr, ante,* p. 385, under the authority of which the judgment must be reversed, unless a basis of distinction can be found in the statements made on behalf of the company before the execution of the non-waiver agreement. The trial court told the jury in effect that if before that time the adjuster instructed Stahl to procure certain proofs, and Stahl afterward did so without having received any notice to the contrary, this might be held to constitute a waiver on the part of the company. In this we think the court erred. Stahl's efforts to furnish for the information of the

Insurance Co. v. Stahl.

company satisfactory evidence of the extent of his loss were all made after entering into the non-waiver agreement, and must be viewed in the light of that instrument, even although they conformed to directions previously given.

The evidence that prior to the execution of the non-waiver agreement the adjuster said that if the insured would furnish certain information after signing the agreement the company would settle with him and pay his claim cannot avail the defendant in error. This statement is alleged to have been made in the course of the oral negotiations leading up to the execution of the written contract, the terms and purposes of which it would destroy if given any effect whatever. To permit a verbal promise made under such circumstances to prevail over the written agreement finally made would be to countenance the very evil against which the rule forbidding the contradiction of writings by oral testimony is designed to afford protection.

Objections have been made to the consideration of the case on review. These have been examined and found not to be well taken. In view of the conclusions already announced the specific assignments of error are not thought to require discussion.

The judgment is reversed and a new trial ordered.

All the Justices concurring.