No. 18,933.

W. A. HAMMOND, *Appellant*, v. THE NIAGARA FIRE IN-SURANCE COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Provisions of Policy that Books and Records Are to Be Kept in Fireproof Safe, or Out of Danger from Fire, Are Valid.* In a contract insuring a stock of merchandise it was provided that the insured should take inventories of his stock at certain times and keep a set of books showing a record of the business transacted by him, and, further, that he should keep such books and the last inventory taken securely locked in a fireproof safe at night or, failing in this, keep them in a place not exposed to a fire which would ignite or destroy the store building, and in case of loss he would produce such books and inventory for the inspection of the insurer, with the further condition that the failure to keep and produce them would avoid the policy. *Held*, that the word "keep" as used in the policy has two meanings: in the first provision it means to make entries in books of the business transacted; and in the second, where it provides that the insured shall keep the books and inventory in a fireproof safe or in some place not exposed to fire, it means that he shall care for and preserve them; and the failure of the insured to both preserve and produce them in compliance with this provision operates to defeat a recovery of the insurance under the policy.

2. SAME—*Knowledge of Agent—No Waiver of Provision in Policy.* The fact that the agent of the insurer examined the stock when the policy was written and might have discovered that the insured did not keep a fireproof safe, or even his knowledge that the insured had no safe at that time, can not be construed into a waiver of the obligation of the insured to keep the books and inventory in the manner and place provided for in the contract of insurance.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed July 7, 1914. Affirmed.

*R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellant.

*M. A. Fyke, E. L. Snyder,* both of Kansas City, Mo., *J. D. Houston,* and *C. H. Brooks,* both of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The question involved in this proceeding is: Does the failure to keep and produce certain records of a commercial business, as required by the terms of a fire insurance policy, bar recovery in case of loss? W. A. Hammond, the appellant, brought this action to recover against The Niagara Fire Insurance Company, the appellee, on a policy of insurance issued by that company upon a stock of merchandise and store fixtures owned by him and located at Towanda, Kan. On July 17, 1911, the appellee, by its agent, G. W. Moore, issued to appellant the policy of insurance upon his stock of merchandise to the amount of $3300 and upon the fixtures to the amount of $200, and a few days thereafter the appellant paid therefor the premium of $45.50. The policy was standard in form, and in it was a provision which required, among other things, that the insured would keep a set of books which would present a record of the business transacted and keep the books and inventories in a fireproof safe at night or at some place not exposed to fire and to produce them in case of loss, and it also provided that a failure to keep and produce the books and inventories would avoid the policy. About three o'clock in the morning of May 9, 1912, a fire occurred and the books of account, which it appears appellant had been keeping upon the top of a trunk in his sleeping room over the storeroom, and the last inventory, which he kept

in the trunk, were destroyed. Appellee's agent was notified of the fire and an adjuster came and interviewed appellant, but he refused to recommend payment of the loss on account of appellant's inability to produce the books of account and the last inventory. He, however, suggested that appellant make proofs of loss to the appellee and also inform it as to the books and inventory. This appellant did about May 17, 1912. The loss was not paid, and on July 25, 1912, appellant brought this action asking for a reformation of the policy of insurance striking out that portion requiring the books and inventory to be kept in a fireproof safe, and also for judgment for the amount of the policy. In the proofs of loss made by appellant the value of the merchandise and fixtures was placed at $4800, and on the trial evidence was introduced tending to show that the last inventory, taken in January, 1912, showed the value of the stock to be about $4200 and the fixtures about $300. Evidence was also introduced tending to show that appellant did not know that the fireproof safe clause was in the policy. A demurrer of appellee to appellant's evidence on the ground that it failed to show a cause of action was overruled, but after the introduction of additional testimony by appellant to the effect that the safe clause in the policy was put in by the agent without mentioning the fact to appellant the court modified its ruling and sustained the demurrer as to the merchandise but overruled it as to the fixtures. The court directed the jury to return a verdict in favor of appellant for $224 for the loss of the fixtures, and overruling appellant's motion for a new trial. Judgment was rendered accordingly. He appeals, and here insists that the ruling of the trial court on the demurrer to the evidence as to the keeping and production of the books and inventory is error.

The contention is that under the terms of the policy the failure to produce the books and inventories does not of itself avoid the policy nor forfeit the right to

recover the insurance.  It is insisted that contracts of insurance are to be construed most strongly against the insurer and most favorably to the insured, that forfeitures are not to be enforced unless definitely provided for in the contract, and that as only one of two contingencies upon which a forfeiture depends in this contract has transpired the policy can not be forfeited.  Under the conditions of the policy appellant was to keep and produce books and inventories, and he contends that he observed the requirement to keep these and only failed as to their production.  Among the conditions of the contract the insured was required to take an itemized inventory of the stock at certain times during the life of the policy.  The second condition was:

"The assured will keep a set of books, which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments of said stock, both for cash and credit, from the date of the inventory or inventories provided for in the first section of this clause, and during the continuance of this policy."

In the third condition it was provided that:

"The assured will keep such books and last inventory and also the last preceding inventory, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy, or the portion thereof containing the stock described therein, is not actually open for business; or failing in this, the assured will keep such books and inventories at night, and at all such times in some place not exposed to a fire which would ignite or destroy the aforesaid building; and in case of loss, the assured specifically warrants, agrees and covenants to produce such books and inventories for the inspection of said company.  In the event of failure on the part of assured to keep and produce such books and inventories for the inspection of said company, this entire policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon."

Appellant did keep a set of books which he says was a complete record of all his business and he did take an inventory as required by the terms of the policy,

and he insists that he only failed as to the production of these. He argues that the policy is to be void only for the failure to do both, and that no penalty attaches for the failure to perform one of the conditions. What is meant by the expression, "to keep and produce"? The word "keep" is a general term which is variously applied and is often used in more than one sense in the same instrument or writing. It may mean to make or enter, or to retain and preserve. It is plain that the meaning of the words "keep a set of books," as used in the second condition of the warranty, is that the insured shall make and enter in books a record of the business transacted by him. As there used the words have no reference to the preservation and safety of the books when they are made. In the third paragraph of the warranty the word has a definite signification. There it means to hold, care for, or preserve, which is the primary meaning of the word. It implies that the books when made and the inventories when taken shall be preserved as against destruction or loss, and to that end it is provided that they shall be placed or kept securely locked in a fireproof safe at night and when the store is not open for business, or, in the event that this is not done, that they shall be kept in a place not exposed to fire which would ignite or destroy the store building. The coupling of inventories with books in the third paragraph tends to strengthen the view that the word "keep" implies preservation, because the keeping of an inventory does not convey the idea of taking or making one, but rather the preserving of it from destruction. The keeping provided for in the third paragraph requires that the books and inventories shall be cared for and preserved so that they can be produced and in case of loss furnish some evidence as to the extent of the loss sustained by the insured and of the liability of the insurer.

Some comment is made on the action of the agent in including this clause in the policy without the knowledge of the insured. It is not contended that there was

any fraud or deception practiced by the agent. The clause is one common in policies insuring merchandise and it is conceded that it serves a useful purpose. In speaking of this clause it was said in *Insurance Co. v. Knerr,* 72 Kan. 385, 83 Pac. 611:

"It is not an unreasonable precaution; it is one with which the insured might very easily have complied. In any event, the parties making the contract agreed that it should be performed by the insured, and since it is a part of the contract it can not be ignored or arbitrarily set aside. It is generally held that neglect on the part of the insured substantially to comply with a clause in an insurance policy to keep the books used in conducting the insured's business in an iron safe, or in some place where they will not be destroyed in case the place in which the insured stock is kept is consumed by fire, will avoid the policy." (p. 387.)

It is said that the agent visited the store building and looked over its contents, and hence had an opportunity to see that there was no iron safe in the building. The agent testified that he did not observe whether or not there was a safe in the building, but that he had no discretion as to the iron-safe clause, as this is a part of the policies in all of the companies represented by him, and that he had no authority to write any other kind of a policy. Even if he had been informed that there was no safe in the store at the time, it would not, in the absence of fraud, relieve the insured from compliance with a plain requirement of the contract. In such a case it would have been his duty to have procured one or else have used the care specified in the alternative provision of the clause. This question was involved in *Insurance Co. v. Knerr,* supra, and there it was said that:

"Conceding that the agent issuing the policy was familiar with the insured store building and stock, and knew that the insured did not keep an iron safe, and that he issued the policy knowing the existence of these conditions, that could not be construed into a waiver of the obligation of the insured to keep the books at night, and when the store was not open for business, in some

secure place not exposed to a fire that would destroy the building in which the insured property was kept." (p. 389.)

(See, also, *Insurance Co. v. Stahl,* 72 Kan. 578, 83 Pac. 614.)

We think the trial court correctly interpreted the contract of insurance, and that the insured failed to keep and produce the books as he had agreed to do, and, further, that compliance with this requirement was essential to a recovery under the policy.

We find nothing in the testimony that would have warranted the court in reforming the contract by striking out the clause in question.

The judgment of the district court will be affirmed.