No. 32,114

JOE SEDLACHEK and ANNA SEDLACHEK, *Appellees,* v. THE HOME INSURANCE COMPANY OF NEW YORK, *Appellant.*

(42 P. 2d 557)

 Opinion
filed April 6, 1935. 

*J. R. Hyland,* of Washington, for the appellant.

*L. W. Rosenkranz* and *F. R. Lobaugh,* both of Washington, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action on a fire insurance policy, and the serious question involved is whether the forfeiture of the policy by a violation of the encumbrance clause was waived by the adjuster after the loss had occurred.

The plaintiffs purchased a new automobile from a Ford agency, paying only a part of the purchase price, and the agency arranged for a loan for the balance of the purchase price with the Universal Credit Company, to which company a chattel mortgage was given, and this fire insurance policy was procured by the agency at the same time, and the mortgage to the credit company was mentioned in the policy. About six months later the plaintiffs were able to reduce the indebtedness by more than $100 and did so by paying off the entire loan and making a new chattel mortgage for the reduced amount to one Max P. Nutsch. On August 10, 1932, about four months later, the automobile was destroyed by fire. The insurance company was notified of the loss, and on August 16, 1932, the adjuster of the defendant company went to the home of the plaintiffs for the purpose of adjusting and investigating the loss.

To the petition of the plaintiffs was attached as an exhibit a copy of the policy containing the usual encumbrance clause, rendering the policy void if the insured property was ever encumbered without the written consent of the insurance company. The defendant company in its answer alleged the making and giving of the chattel mortgage to Max P. Nutsch without its knowledge or consent, and it claimed thereby to be relieved of any and all liability under the policy. The plaintiffs by way of reply alleged a waiver of forfeiture, if any such operated or applied in the case, by the acts, words and conduct of the adjuster of the defendant company.

It is not seriously contended by counsel for plaintiffs that the encumbrance clause is not applicable here or that the giving of the chattel mortgage to Nutsch would not forfeit plaintiffs' claim under the policy, so that feature of the case need not be considered in this

case, as there appears to be none of the exceptions urged that are usually considered in connection with such claims of forfeiture.

Another feature of the case which will not need special consideration is the sending of a blank "statement of loss" by the adjuster to the plaintiffs six days after the adjuster had been at the residence of plaintiffs to appraise and determine the loss because such blank had printed on it a statement that the furnishing of such blank should not be a waiver of any of the rights of the insurer.

The trial court made findings of fact and conclusions of law and rendered judgment thereon in favor of the plaintiffs, from which the insurance company appeals.

Three questions seem to be involved: (1) Did the adjuster have any authority to waive the terms of the policy; (2) did the adjuster intend to waive the terms of the policy; (3) did the acts and conduct of the adjuster as shown by the findings of fact, and upon which the second conclusion of law is based, operate as a waiver of the terms and conditions of the policy?

The important findings of fact bearing on these questions involved are the following:

"7. About August 16, 1932, one A. W. Haerer, employed by the Western Adjustment and Inspection Company, independent adjusters, came to plaintiffs' residence for the purpose of adjusting and investigating the loss and to determine the liability of the defendant company. Said adjuster proceeded to view the loss and had a conversation with the son of plaintiffs and with the plaintiff Anna Sedlachek, the plaintiff Joe Sedlachek not being at home.

"8. Defendant insurance company frequently employed the Western Adjustment & Inspection Company to adjust losses for it, and Witness Haerer had personally adjusted a large number of losses in the course of his employment by the Western Adjustment & Inspection Company for defendant insurance company.

"9. During the conversation between Haerer and the son of plaintiffs he learned for the first time of the mortgage given by plaintiffs to Max P. Nutsch.

"10. After learning of the mortgage to Nutsch the adjuster determined the amount of loss to be $350, less $12.50, the value of the salvage, which amount plaintiff Anna Sedlachek and her son told the adjuster was not an adequate amount for the loss, and which they refused to accept.

"15. On September 1, 1932, the Western Adjustment & Inspection Company wrote a letter to plaintiffs stating in substance that 'We as adjusters in charge of your claim for total loss deny liability because of the Nutsch mortgage not being recognized in your policy. This in accordance with instructions received from the interested insurance company.'

"16. The adjuster, Haerer, never communicated to plaintiffs any limitations on his authority, as to making adjustment of the loss, and there was nothing

in the instructions to the adjuster from the defendant company limiting or not limiting his right to waive conditions in the insurance policy.

"17. The actual value of the automobile at the time of its destruction was $500."

The conclusions of law made by the trial court were the following three:

"1. The court concludes as a matter of law that the adjuster had authority to waive provisions in the policy of insurance.

"2. That after learning of the right to avoid the policy on account of the Nutsch mortgage his continuing to deal with the plaintiffs by offering an amount in settlement of the loss and by requesting further statement of loss amounted to waiver of the right of the company to insist on a forfeiture of the policy.

"3. That the plaintiffs should have judgment for the value of the car together with a reasonable attorney's fee."

Defendant company filed a motion for judgment on the findings of fact, calling special attention to the apparent discrepancy between the actual finding in No. 10 and the language used in conclusion of law No. 2 as to offering an amount in settlement of the loss. The court overruled the motion, stating that the finding is as far as he feels justified in finding and determining upon the evidence presented. We are at a loss to understand how a supposed fact can be made the basis of a conclusion of law when the court does not feel justified in including it among the findings of fact, and we are compelled to disregard such statement in the conclusion of law as a finding of fact under the ruling in *Frontier Lodge v. Wilson,* 139 Kan. 75, 30 P. 2d 307, and if it were an essential finding and alone on the subject the conclusion would have to be disregarded. However, there are in this case other findings tending toward that mentioned in the conclusion which we think will remedy the situation in this respect.

On the question of the authority of the adjuster to waive the terms of the policy, findings 7, 8 and 15 strongly indicate such authority, and finding 16 is about conclusive that such was his authority. There appears to be sufficient evidence, if believed by the trial court, to support these particular findings. In fact, the evidence of the adjuster himself, if credited, would practically place no limit whatever on his power to waive provisions in the policy if he wanted to do so.

There has always been a distinction as to waiver of provisions in the policy which form a part of the contract of insurance and those

matters which may be performed after the loss has occurred. It is said in 14 R. C. L. 1345:

"A clause in a policy of insurance prohibiting any waiver unless indorsed thereon refers only to those provisions of the policy which enter into and form part of the contract of insurance, and which may properly be designated as conditions; it has no reference to those stipulations which are to be performed after a loss has occurred. . . ."

In 2 Couch on Insurance Law, page 1503, it is said:

". . . restrictions in the policy upon an agent's powers do not relate to conditions to be performed after loss has occurred, such, for example, as giving notice, furnishing proofs, submission to arbitration, etc. Likewise, a stipulation in a policy prohibiting waiver of any conditions in the policy by an agent of the company, unless authority to waive be conferred upon the agent by a writing signed by an officer, does not relate to conditions to be performed subsequently to the loss."

The third syllabus in *Insurance Co. v. Gray,* 43 Kan. 497, 23 Pac. 637, is as follows:

"A provision in an insurance policy respecting encumbrances on the property insured may be waived by the insurance company or its general agent; and this although the policy contains a printed stipulation that no agent of the company or any person other than the president or secretary shall have authority to waive any of the terms or conditions of the policy, and all agreements by the president or secretary must be signed by either of them."

This principle was thoroughly approved and forcibly supplemented in the opinion in the case of *Insurance Co. v. Munger,* 49 Kan. 178, 30 Pac. 120.

Counsel for appellant cite *Insurance Co. v. Knerr,* 72 Kan. 385, 83 Pac. 611, where a different rule was sustained, but under exceedingly different circumstances. When the adjuster came to the place of the loss he refused to confer with the insured or proceed in any way to adjust the loss unless and until the insured should sign an agreement that any action taken by the adjuster shall not waive or invalidate any of the conditions of the policy, and the court held that under such special agreement there was no waiver of the provisions of the policy.

The case of *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730, is also cited in this connection and had to do with requirements necessary to the taking effect of the policy and the payment of the premium thereon as distinguished from those requirements and incidents occurring and arising after the loss.

Did the adjuster intend to waive the terms of the policy, and did

his acts and conduct, as shown by the findings, operate as a waiver? Finding No. 10 has most to do with this question, and it is supplemented by finding No. 15 about the letter he wrote the plaintiffs. While finding No. 10 does not contain a finding of an offer in settlement of loss, as indicated in conclusion No. 2, yet it does contain a statement that the adjuster determined the amount of loss to be $350 less $12.50, the value of the salvage, and the further statement that one of the plaintiffs, the wife, and her son told the adjuster that the amount he had determined to be the loss was inadequate "and which they refused to accept." They did not tell him they would refuse to accept it when the company would offer it to them, but when they told him it was inadequate they at the same time refused to accept it. Refusing to accept implies an offer or a proposal of something that might be accepted. The adjuster must have told them of his having determined the amount of loss or they would not have been able to tell him the amount was inadequate and refused to accept it. Taking the language of the tenth finding in the most exacting sense, it necessarily conveys the conclusion that it contained the elements and features of a negotiation. Besides, the adjuster determined the loss to be $350, while the trial court found it to be $500. In other words, the adjuster was working to the interest of his employer to the extent of thirty per cent of the value of the car, if his determination should be accepted.

While in matters of review we are limited to the findings of fact, yet there is an exception as to written documents introduced in evidence which can be considered if they go farther or contain something more than shown in the findings. Finding No. 15 quotes a part of the letter of the adjuster finally denying liability of the insurance company, and we think the full text of the first paragraph of that letter not only indicates something along the line of previous negotiations, although not very strongly, but does definitely admit the authority of the adjuster in the matter of adjustment of loss. It is as follows:

"It is regrettable that we, as adjusters in charge of your claim for total loss by fire on your 1931 Ford Tudor, must advise you that we are herewith respectfully denying any and all liability on your car because of the circumstances of a mortgage thereon not recognized in your policy contract."

Appellant cites *Crandon v. Insurance Co.*, 99 Kan. 785, 163 Pac. 458, where an offer was made of fifty per cent of the loss on the merchandise by fire where the iron-safe clause was violated, and the

policy also covered real estate not lost, and the premium was retained, and the court held the offer did not constitute a waiver. However, this case is very much like the Knerr case, in that a plain and positive oral statement was twice made by the adjuster of the nonliability of the company before any conference was had along the line of any adjustment, and this is mentioned in the opinion in connection with the holding of nonwaiver.

The case of *Elliott v. Bankers & Shippers Ins. Co.*, 137 Kan. 492, 21 P. 2d 376, is in many ways very similar to the case at bar. It was about insurance on an automobile lost by fire. The owner's name was not in the fire insurance policy. When the car was purchased and arrangement was being made for a loan on the car for the balance of the purchase price, the credit company declined to take the note of the purchaser, and his brother was induced to sign the note and mortgage instead of the owner of the car. The defense was made by the insurance company that the car owner's name was not in the policy and the company was not liable to him. The decision was in favor of the car owner because of waiver by the adjuster. The following is part of the opinion on this subject from pages 497 and 498:

"If there was anything lacking in the support of this view it would be cured by the act of the adjuster, the representatives of the defendant, who had been sent there to adjust the loss. The various steps which he took towards adjustment after learning of the omission of the plaintiff's name in the contract, and the dealing with the plaintiff as the purchaser, would of itself bind the defendant. He called the plaintiff and together they made repeated inspections of the car to determine the extent of the damage, and discussed with him the credit the defendant would be entitled to obtain from the salvage; then he negotiated with the garage man as to the amount he would pay for the damaged car. When he returned some weeks later he still recognized the plaintiff as a purchaser and owner of the automobile, and took from him another statement or claim of loss. While the adjuster denied his authority to settle the loss, that was his business, and he also admitted that he had adjusted and settled losses for the defendant prior to that time. Knowing of the omission in the insurance contract, he carried on negotiations with plaintiff as a purchaser, and the defendant in effect thereby recognized the claim of plaintiff that he was the purchaser and therefore entitled to the insurance which belonged to a purchaser in the scheme of insurance."

In *Assurance Co. v. Bradford*, 60 Kan. 82, 55 Pac. 335, it was held:

"When a fire insurance company, after the occurrence of a loss by one of its policyholders, receives knowledge of an act upon his part justifying it in declaring a forfeiture of his policy, and fails to make such declaration, but, instead, negotiates with him for a settlement of the loss, it will be deemed,

when sued upon the policy, to have waived the right of forfeiture." (Syl. ¶ 2.) (See, also, *Insurance Co. v. Allen,* 69 Kan. 729, 77 Pac. 529; *Mayse v. Great American Ins. Co.,* 123 Kan. 692, 256 Pac. 1002; and *Ring v. Assurance Co.,* 100 Kan. 341, 164 Pac. 303.)

We conclude that the adjuster not only had authority to waive the terms of the policy and by his acts, words and conduct intended to do so, but also that his acts, words and conduct, as contained in the findings of fact, operated as a waiver of the terms and conditions of the policy as to encumbrances and support the conclusions of law in favor of plaintiffs.

The judgment is affirmed.