No. 36,392

BERTHA LATTNER, *Appellee*, v. FEDERAL UNION
INSURANCE COMPANY, *Appellant*.

(163·P. 2d 389)

Opinion filed November 10, 1945.

*Clayton Brenner,* of Olathe, argued the cause for the appellant.
*Roy S. Lowe,* of Olathe, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to recover the amount fixed under the terms of an insurance policy as payable upon the destruction by fire of property described therein. The plaintiff was successful. A jury returned a verdict in her favor for the full amount of the policy and judgment was duly rendered thereon. The defendant appeals.

On June 5, 1943, Hodges Brothers were the owners of a stucco frame building located on Highway No. 50 near the city of Olathe and procured a policy of insurance from defendant by the terms of which it insured such building together with certain fixtures and appurtenances for the sum of $1,250 for a period of three years against all direct loss and damage by fire. They sold the property on June 15, 1943, to the plaintiff, transferred title to her by deed and took as a part of the consideration a mortgage thereon in the sum of $1,087.46. Subsequently they notified defendant's agent of the sale and advised him they desired that the insurance be kept in force and effect. On January 4, 1944, a fire occurred which totally destroyed all property insured. Plaintiff then brought this action to recover the full amount named in the face of the policy.

The plaintiff's petition is quite lengthy and its recitals do not require detailed relation. When stripped of surplus verbiage it reveals her cause of action is predicated upon the premise that defendant waived the provision of the policy providing that the entire policy should become void if any change took place in the title to the insured premises without written consent thereto being endorsed on or added to it.

Defendant's answer admitted the issuance of the policy to Hodges Brothers and conceded the sale and transfer to plaintiff of the property therein covered as well as the execution of the mortgage, but alleged that such transfer and mortgage were without its knowledge or consent and that it did not have any knowledge of those transactions until long after they were completed. The answer further referred to the provision of the policy with respect to sale, charged that it had been violated with the result the entire policy had become null and void, specifically denied the defendant had ever agreed, or in fact been requested, to keep the policy in force for the benefit of the plaintiff and disclaimed liability to her under such policy in any sum.

With issues joined as herein related the cause came on for trial to a jury. During the course of the trial defendant demurred to plaintiff's evidence, requested the court to instruct the jury to return a verdict in its favor, and moved to set aside the verdict because it was not supported or sustained by the evidence. Refusal of the trial court to sustain the demurrer or either of the motions are the principal grounds upon which defendant bases its right to a reversal of the judgment. Other grounds are assigned as error but will not be here detailed for the reason they will be subsequently mentioned.

Preliminary to consideration of the immediate grounds of error just referred to we believe it will simplify the issues to review certain canons of fundamental law applicable to the determination of liability on an insurance policy, irrespective of the status of the evidence, in a situation such as is disclosed by the pleadings and the statement of uncontroverted facts immediately preceding them. With that in mind we direct our attention to those principles which are too well established in this jurisdiction to admit of dispute and which, as we have indicated, must be recognized and applied in every case where the pleadings and the facts revealed by the evidence hereinafter fully discussed, raise issues such as those with which we are confronted in the case at bar.

The first, so elemental as to require no citation of authority, in fact apparently conceded and certainly not argued by appellant, is that in the procuring of protection against fire by the issuance of an insurance policy one party may enter into a contract with the insurance company the benefits of which will inure to a third person and furnish him with the basis for a cause of action against

the company even though he has had no part in the actual transaction and such action is taken without his request or knowledge. That this is true is evidenced by the countless number of insurance cases where recovery has been allowed on policies of insurance under circumstances where the owner of property has procured the insurance and made it payable to himself or his mortgagee as their interests might appear, or its converse, where the mortgagee has insured the property under the terms of a policy providing such insurance was payable to him or to the record owner in proportion to the interest each might have therein at the time a loss occurred.

Another is that where, as here, a stipulation is inserted in a policy of fire insurance for its benefit the company issuing such policy may waive such provision and may be estopped from asserting its forfeiture. (*Am. Cent. Ins. Co. v. McLanathan,* 11 Kan. 533; *Columbian Nat. Life Ins. Co. v. Rodgers,* 116 F. 2d 705, certiorari denied, 61 S. Ct. 838, 313 U. S. 562, 85 L. Ed. 1521; 29 Am. Jur. 604, § 800.; 44 C. J. S. 1092, § 275 [2]; 16 Appleman, Insurance Law & Practice, 601, § 9083.)

That the waiver to which we have just referred may result from action on the part of the company's general agent and may be either express or implied, oral or written, and be as binding upon it as if such were its own act—in fact is its own—has long been the rule under our decisions.

In the instant case it is conceded appellant's agent was authorized to issue policies and consummate contracts of fire insurance. Under such conditions and circumstances we have repeatedly held such an agent to be a general agent with authority to bind his company by an act, agreement, waiver, or representation within the ordinary scope and limit of insurance business which is not known by the assured to be outside the power and authority granted to such agent. (*Am. Cent. Ins. Co. v. McLanathan,* supra; *Insurance Co. v. Barnes,* 41 Kan. 161, 21 Pac. 165; *Despain v. Insurance Co.,* 81 Kan. 722, 106 Pac. 1027; *Insurance Co. v. Munger,* 49 Kan. 178, 30 Pac. 120, and *Insurance Co. v. Bank of Pleasanton,* 50 Kan. 449, 31 Pac. 1069.)

To the same general effect is *Cless v. Republic Casualty and Surety Co.,* 128 Kan. 416, 419, 277 Pac. 793.

So, also, under our decisions no question exists as to the power and authority of a general agent to modify the insurance contract or waive a condition of a written fire insurance policy by parol.

And this is true even though the policy contains a printed stipulation to the contrary. (*Insurance Co. v. Gray,* 43 Kan. 497, 23 Pac. 637; *Insurance Co. v. Munger,* supra, and *Sedlachek v. Home Ins. Co.,* 141 Kan. 626, 630, 42 P. 2d 557.) Although not directly in point for further exemplification of the same proposition, see *Insurance Co. v. Ireland,* 9 Kan. App. 644, 58 Pac. 1024; *Wilson v. Insurance Co.,* 90 Kan. 355, 133 Pac. 715, and *Yasbec v. Hartford Accident & Ins. Co.,* 132 Kan. 827, 297 Pac. 422.

And lastly, whatever the rule may be elsewhere, and we concede it is one on which there is a wide division of authority (29 Am. Jur. 651, § 855), this court is committed to the doctrine that with respect to provisions inserted in a policy of fire insurance for the insurer's benefit, knowledge of their violation not followed by action on the part of the insurer canceling such policy within a reasonable time after notice constitutes a waiver and estops it from asserting the policy is null and void even though it contains a clause to that effect. In *Insurance Co. v. Knutson,* 67 Kan. 71, 72 Pac. 526, we held:

"The provisions of an insurance policy issued by a mutual fire insurance company organized under the laws of this state, and of the bylaws of the company attached to such policy, to the effect that the procuring of additional insurance on the property covered shall render the policy void unless the written consent of the company be indorsed on the policy, are waived by the failure of the company either to cancel the policy or to indorse its consent within a reasonable time after notice to it of the additional insurance, and before loss occurs." (Syl. ¶ 1.)

And said:

"The company claims that, even though it received proper notice of the additional insurance, it did not indorse its consent thereto upon the policy, and hence that the policy was void. Some two months elapsed from the giving of the notice until the loss occurred. Upon receiving the notice the company had a right to take advantage of the provisions of its policy and bylaws. The provisions quoted therefrom were inserted for its sole benefit. When it assumed to remain passive the assured was deprived of any opportunity to protect himself if the policy were to be forfeited. The term 'void,' as used in the contract, is to be regarded as meaning that the insurer had, at its exclusive option, the right to treat the policy as a nullity. It was put to its election whether or not it would do so upon receipt of the notice, and having failed to act within a reasonable time, it is estopped to claim a forfeiture when it became to its advantage to do so, after loss had occurred [and cases there cited]." (p. 74.)

The rule just enunciated, although not applied because the defendant there involved was a mutual company instead of a stock

company and therefore not subject to its application, was recognized and affirmed in *Martin v. Farmers Alliance Ins. Co.*, 144 Kan. 324, 326, 59 P. 2d 25. See, also, the dissenting opinions of Mr. Justice Dawson, page 327, and Mr. Justice Harvey, page 327.

When the general principles heretofore announced are applied to issues raised by the pleadings and the conceded facts of this case such issues as we have heretofore suggested are simplified. It becomes immediately apparent so far as the grounds specifically mentioned and relied on as error are concerned, irrespective of how they are stated, that the one vital and all-important question for determination is whether under the evidence produced by appellee it can be said there appears such a waiver of the provision of the policy with respect to transfer of title as to estop the appellant company from denying liability on the ground the entire policy had become null and void because of its violation. If so, the overruling of a demurrer to the evidence was proper.

The conclusion just announced requires an examination of the evidence. Because of its importance we shall relate it at some length. Its legal effect will, of course, be determined under the uniform rule announced in all our decisions (*In re Estate of Bond*, 158 Kan. 776, 781, 150 P. 2d 343, also *Staab v. Staab*, ante p. 417, 163 P. 2d 418, this day decided, and cases there cited) that in ruling on a demurrer to the evidence courts do not weigh evidence or compare contradictory testimony; they must accept all evidence as true and consider only such portions thereof as are favorable to the party adducing it; they must disregard all unfavorable evidence, are required to give full credence to all evidence adduced by the party against whom the demurrer is lodged and give it the benefit of all inferences which may be reasonably drawn therefrom in the light most favorable to his interest.

Searching the record for evidence offered by plaintiff we find testimony by witnesses, portions of which follow: The form in which it is related is not ours but that of the parties as presented to us in the abstract and counter abstract.

D. R. Hale, an employee of Hodges Brothers:

"Testifies to property being sold to plaintiff and mortgage taken back. He was asked, 'whether at that time or about that time you notified Mr. Stewart (the insurance agent) that you had sold this property or was selling the property to Mrs. Lattner, and was taking back a mortgage'?

"A. Oh, we notified him. I don't remember when it was we told him be-

478

cause in the transaction the insurance wasn't—it wasn't included in the statement—the new policy wasn't. . . .

"Q. And did you at that time notify Mr. Stewart you were selling the property to Mrs. Lattner and you were carrying back a mortgage and the policy should be kept in force?  A. We told him, but I don't remember when it was. . . .

"Q. You did tell Mr. Stewart, didn't you that you would pay it if Mrs. Lattner didn't?  A. Yes, sir.

"Testified, also that he had several talks with Stewart about the transfer of the property to plaintiff, and—  A. I presume we discussed it for the reason he was wanting us to pay that premium and we were trying to get Mrs. Lattner to pay it.

"Q. And as you said a while ago, you think you did tell him to keep the policy in force?  A. Yes, sir.

"Q. Did you, or did you not, at the time Mr. Stewart asked you about the insurance premium, and you told him about having sold the property to Mrs. Lattner and taken a mortgage back, tell Mr. Stewart she didn't want the insurance—she was going to see another agent and get cheaper insurance? A. I don't recall of her saying she didn't want the insurance.  She did mention that they were going to try to get the rates reduced and get some insurance that was cheaper."

### Bertha Cunningham, another employee of Hodges Brothers;

"Q. Did you at that day or time of this sale back to Lattner and the mortgage that Mr. Hodges took back—did you or not, notify Mr. Stewart of the —or talk with Mr. Stewart and tell him that the property had been conveyed back to Mrs. Lattner and you had taken a mortgage and you wanted the insurance to remain in force?  A. I talked with him over the phone about it.

"Q. And did you tell him that, in effect?  A. Yes, sir.

"Q. Did you ever ask Mr. Stewart to transfer this policy to Mrs. Lattner? A. I don't think I did.

"Q. You never did.  You knew it wouldn't be binding upon this company until it had been so transferred?  A.  Mr. Stewart usually takes care of these things for me.

"Q. You knew that Hodges Brothers was obliged to pay the premium on this policy, is that right?  A. I knew we didn't want the policy canceled and therefore we would pay it if she didn't."

### Bertha Lattner, the plaintiff:

"Q. Did you ever, after the fire, have any conversation with Harry Stewart, the agent of the insurance company, relative to the premium?  A. Yes, I called him the morning after the fire.

"Q. Did he or not, at that time or any other time, tell you that the insurance company had been paid its premium on this property?  A. Yes, sir.

"Q. He told you the company had been paid?  A. He told me the company had been paid and the policy was in force.

"Q. He told you the policy was in force?  A. That is right.

"Q. And, that was after the fire?  A. Yes, sir."

The foregoing is the most favorable testimony adduced by appellee in support of her position the provision in the policy with respect to sale was waived and that appellant was estopped to assert its invalidity on that account. Although unnecessary we pause to here state there was other testimony less favorable to her contention to which we have made no reference because of the rule requiring us to ignore all unfavorable or contradictory testimony and give appellee's testimony the benefit of all inferences to which it is entitled on demurrer.

What then in the light of the rule is to be said for plaintiff's evidence? Did it establish a waiver of the provision with respect to sale of the property? We concede it is not as convincing as might be desired. Nevertheless, when tested by a measuring stick which requires us to give it the benefit of all inferences favorable to appellee, we are forced to conclude the agent Stewart knew— and for that purpose he was the appellant—that title to the property insured had been transferred to the appellee, he was advised by Hodges Brothers they desired the policy be kept in force, and he at least impliedly agreed it was and should remain in full force by efforts to obtain payment of the full premium after having complete information as to the then existing status of the parties and the property. In addition, after the fire he told Mrs. Lattner the premium had been paid and the policy was in force. Under such circumstances we cannot say the trial court was not justified in concluding the provision of the policy had been waived and that appellant was estopped from asserting its invalidity. Of a certainty that conclusion was justified when in conjunction with the evidence to which reference has been made, the trial court took into consideration the additional and undisputed testimony that after having acquired knowledge of the transfer of title the company stood idly by for several months, in fact until after the fire occurred, before it made any attempt to cancel the insurance. We hold the demurrer to the evidence was properly overruled.

It would serve no useful purpose to here cite cases where provisions in policies of insurance similar to the one which confronts us have been held to have been waived. Each case depends upon the particular facts involved. Our somewhat extended search of the authorities has disclosed few cases where decision as to the sufficiency of the evidence depended on a factual situation similar to the one at bar. We have, however, found one which deals with

facts almost identical. It is *New York Fire Ins. Co. v. Reed* (Tex. Civ. App.) 138 S. W. 2d 138. We believe the conclusion there reached was sound in principle. Since it is a bay-horse case and serves as a precedent for and fortifies our own, we make mention of it.

Having determined the ruling on the demurrer was proper we pass over other grounds of error to which specific reference has heretofore been made with the comment that evidence adduced by the appellant on its own behalf tended to strengthen rather than to weaken the appellee's position. There was evidence from which the jury as the trier of fact could properly find the provisions of the policy had been waived. It follows there was no error in over-ruling the motion to direct a verdict, the motion to set aside the verdict or the contention the trial court erred in rendering judgment on the verdict because it was not supported by substantial evidence.

Another specification of error not before referred to relates to alleged erroneous instructions. We have examined those complained of and find nothing in them which requires a reversal of the judgment. Besides, the only objection made to them was that they individually and collectively did not state the law applicable to the facts and issues. That objection did not point out any defect in the instructions or direct the trial court's attention to what appellant relied on as the basis for its contention; it was too general and under our decisions is insufficient to bring such instructions here for appellate review.

Finally, it is urged the trial court erred in not making an allowance of attorneys' fees as a part of the judgment and in any event the allowance of a $500 attorney fee was excessive. The record reveals the matter of the allowance of the fee, although presented on the date judgment was rendered on the verdict, was taken under advisement by the trial court until the hearing of the motion for new trial. At that time such fee was allowed and ordered taxed as a part of the costs. We see nothing wrong with that procedure and the case cited by appellant does not sustain its contention.

We do, however, have more serious doubts as to the propriety of the amount of the attorney fee as allowed. The purpose of the statute allowing an attorney fee in insurance cases is not to penalize an insurance company for making what it deems to be a bona

fide defense to an action to recover on an insurance policy, but to permit the allowance of a fair and reasonable compensation to the assured's attorney in the event, after having been compelled to sue on his policy, he is successful in that effort. In the instant case the amount involved was not large, the entire trial took but two days and the transcript of all the testimony required not to exceed sixty-eight pages. In view of all the circumstances we are of the opinion the fee was excessive and direct that it be reduced to $250.

To the extent noted the judgment is modified; otherwise it is affirmed.

WEDELL and BURCH, JJ., dissent.